MARINE MIDLAND BANK-CENTRAL, Respondent-Appellant, v RICHARD A. GLEASON et al., Appellants-Respondents.

Fourth Department, May 19, 1978

## APPEARANCES OF COUNSEL

*Coulter, Fraser, Ames, Bolton, Bird & Ventre (Henry Fraser* of counsel), for appellants-respondents.

*Hancock, Estabrook, Ryan, Shove & Hust (Richard Cook* of counsel), for respondent-appellant.

CARDAMONE, J.

Plaintiff, Marine Midland Bank's complaint alleges malpractice, negligence and breach of contract against the defendants Richard A. Gleason, Walter C. Foulke, Paul Magill and Gerald Hewitt, individually and doing business as a partnership known as Gleason, Foulk, Magill and Hewitt, for its failure to file promptly a UCC-1 financing statement with the New York Secretary of State covering certain personal property as security for a loan made by plaintiff to Auburn Inn, Inc. Plaintiff claims that as a result of the tardy filing collateral securing the loan was lost to Federal and State tax authorities as holders of intervening tax liens. Plaintiff seeks to recover from defendants the amount of the value of its lost collateral.

On December 15, 1972 the Small Business Administration (SBA) authorized a guaranteed participation loan by plaintiff to Auburn Inn, Inc., a hotel and restaurant operator. SBA promised to purchase 78% of the $275,000 loan and pay 78% plaintiff's costs and expenses in th event of default. The conditions of approval, *inter alia,* required execution of a note by the borrower payable in installments; unconditional personal guarantees by a number of individuals; a first mortgage on the borrower's hotel real property located in Auburn; and a "First Security Interest (under New York State Uniform Commercial Code) in all machinery, equipment (excluding automotive equipment), fixtures and furniture now owned and hereafter acquired by Borrower."

The defendant law firm was retained by plaintiff to represent it in the preparation of the necessary papers and at the closing. The note and mortgage were prepared under the supervision of defendants and were executed on January 5, 1973. The mortgage contained a provision granting plaintiff a security interest in "all fixtures and articles of personal property now or hereafter used or intended to be used in connection with said premises". The mortgage was duly recorded in the Cayuga County Clerk's office on January 5, 1973. At the same time, a UCC-1 financing statement covering "All machinery, equipment (excluding automotive equipment), fixtures and furniture now owned and hereafter acquired by debtor" was filed in the Cayuga County Clerk's office. However, no financing statement covering the debtor's personal property was filed with the Department of State until March

5, 1975 when a UCC-1 form identical to that previously filed with the County Clerk was filed by plaintiff's attorneys.

On May 8, 1974, October 9, 1974 and February 18, 1975, the New York State Tax Commission filed three tax warrants in the Cayuga County Clerk's office against Auburn Inn, Inc., for its failure to pay sales and use taxes imposed pursuant to articles 28 and 29 of the Tax Law. The warrants totaled $40,398.69. A "Notice of Federal Tax Lien" was also filed in the same County Clerk's office on February 4, 1975 and on February 7, 1975 in the office of the Secretary of State. The Federal tax warrant totaled $33,141.64.

On February 20, 1975 the State Tax Commission purported to levy on the furnishings; and personalty of the inn when its representives padlocked several areas, posted notices and removed the liquor license. The cash register was emptied and the money taken by the State's agents.

On March 5, 1975 Auburn Inn, Inc., defaulted in its mortgage payments and a foreclosure proceeding was commenced by plaintiff. Judgment of foreclosure and sale was entered in the Cayuga County Clerk's office on July 30, 1975. The judgment directed sale by the referee and provided that if the proceeds were insufficient to pay the debt, plaintiff could recover any deficiency from the guarantors, "provided a motion for a deficiency judgment shall be made as prescribed by section 1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount thereof is determined and awarded by an order of this court as provided for in said action". At the foreclosure sale on August 27, 1975 plaintiff bid in the premises for $223,400 and a deed thereto was delivered to plaintiff by the referee on September 11, 1975. The foreclosure sale left a deficiency balance of $78,763.76. On September 15, 1975 plaintiff in turn conveyed the premises to the SBA.

The State Tax Commission held its tax lien sale of the hotel's equipment on September 2, 3 and 4, 1975. The gross proceeds of the sale amounted to $53,690.40 and, after the deduction of expenses, the net amount realized was $47,431.38. No portion of the moneys resulting from the sale of the hotel's equipment remained to be applied to plaintiff's deficiency.

Recognizing the potential liability of defendants herein, plaintiff and the guarantors of the mortgage debt stipulated that plaintiff could move pursuant to section 1371 of the Real

Property Actions and Proceedings Law for a deficiency judgment within 30 days after settlement or entry of final judgment in the instant action. Plaintiff bank commenced the present action on December 9, 1975 seeking recovery of $53,690.40, the amount realized by the State from the sale of the hotel's equipment and the value of the collateral allegedly lost by reason of defendant's failure to perfect plaintiff's security interest in that equipment.

Plaintiff moved for summary judgment in the amount of $53,690.40 and defendants cross-moved for summary judgment seeking a dismissal of plaintiff's complaint. Special Term awarded partial summary judgment to plaintiff in the sum of $33,141.64, the amount of the Federal tax lien, and ruled that the stipulation extending the time for plaintiff's motion for a deficiency judgment did not operate to discharge defendants from liability for malpractice. Special Term also held that the filing of the Federal tax lien gave the Federal Government a perfected security interest in the taxpayer's personalty to the extent of $33,141.64, which interest was superior to plaintiff's unperfected security interest in the hotel equipment; and, finally, held that issues of fact were presented on the question of whether the State's tax lien was superior to plaintiff's security interest in the hotel equipment.

Concededly, the defendants did not file the UCC-1 financing statement covering the hotel personalty with the Department of State as required by section 9-401 (subd [1], par [c]) of the Uniform Commercial Code until March, 1975. Therefore, the security interest was not perfected until that date and the rights of prior lien creditors have priority over the holder of the security interest. Defendants, on this appeal contend that earlier filed State and Federal liens suffer from fatal infirmities promoting plaintiff's later filed lien to a superior position. Thus, defendants urge that the fact that they failed to file the UCC-1 financing statement with the Department of State until March, 1975 in no way prejudiced plaintiff's interest in the collateral. Plaintiff has also appealed and contends that it should be granted summary judgment for the full amount of its loss because the State tax warrants which it asserts became perfected liens upon filing, cut off plaintiff's rights in the collateral.

■ Defendants claim that the stipulation entered into between plaintiff bank and the guarantors of the loan which purported to extend the 90-day statutory period for recovery

of a deficiency judgment is invalid (Real Property Actions and Proceedings Law, § 1371). Hence, they argue that under the express terms of the statute where a motion for deficiency judgment is not made within the statutory period, the mortgage debt is deemed fully satisfied in all respects (§ 1371, subd 3), rendering the present action nugatory. We reject this argument as did Special Term which properly observed that the present action was not commenced to recover any deficiency in the mortgage debt but, rather, was instituted to recover damages from defendants to cover the loss sustained by plaintiff because of defendants' failure to secure its collateral *(French Evangelical Church of N. Y. v Borst,* 22 AD2d 511).

We turn next to defendants' contention that inasmuch as no valid levy was made by the State upon the hotel's personalty prior to the filing of the UCC-1 financing statement of March, 1975, plaintiff's lien on the hotel's personalty was superior to the State tax liens. Defendants' assertion that a lien results against personalty only when active steps are taken towards a levy, rather than upon the mere docketing of a warrant, is incorrect. The plain language of subdivision (b) of section 1141 of the Tax Law, which procedures apply to articles 28 and 29 of the Tax Law, belies such a contention. That section provides that from the time the tax warrant is docketed it becomes a lien upon both the real and personal property of the delinquent taxpayer. Defendants rely on further language contained in section 1141 of the Tax Law to support their contention that no lien upon the delinquent taxpayer's personalty arises until there is a valid levy upon his property is misplaced. That section provides that the Sheriff shall then proceed upon the warrant, "in the same manner, and with like effect, as that provided by law in respect to executions issued against property upon judgments of a court of record" (Tax Law, § 1141, subd [b]). The above language merely indicates the manner of enforcement of the State's lien and does not define circumstances under which the lien itself arises *(Corrigan v United States Fire Ins. Co.,* 427 F Supp 940, 943). Since the tax liens, which are perfected upon the docketing of the tax warrant, arose before the perfection of plaintiff's security interest they are superior to it.

The fact that the State's tax warrants were filed before the plaintiff's security interest was perfected does not result in

the State obtaining permanent priority. The lifetime of an execution relating to property capable of delivery is 60 days from its issuance, unless extended in writing for a period of not more than an additional 60 days (CPLR 5230, subd [c]). The lifetime of an execution relating to property not capable of delivery is 90 days (CPLR 5232). The effect of section 1141 of the Tax Law, that the Sheriff shall proceed upon the warrant "in the same manner, and with like effect" as that provided by law in respect to judgment executions, is to extinguish the tax lien, where there is no proper levy within its lifetime. There is no claim that the State attempted to levy upon the taxpayer's property prior to February 20, 1975 which was well past the time period for execution upon the May 8, 1974 and October 9, 1974 tax warrants. Therefore, any power to levy arising with respect to those warrants was ineffective and the liens purportedly arising from their docketing were extinguished by operation of law.

There still remains the question of whether there was a valid levy pursuant to the February 18, 1975 State tax warrant in the sum of $14,391.03. The defendants claim that the alleged levy on February 20, 1975 was insufficient. Special Term held that issues of fact existed as to whether there was a proper levy on February 20, 1975 and whether the requirements of the pertinent statutes were fulfilled.

██ Whether there has been an effective levy may be a question for the jury (e.g., *Roth v Wells,* 29 NY 471), but where the facts in reference to the levy are uncontradicted the question is one of law *(Bond v Willett,* 31 NY 102). Here it is undisputed that on February 20, 1975 the State Tax Commission agents visited the premises, posted notices of levy, padlocked various doors, seized and removed the taxpayer's liquor license and cash on hand, and froze its bank account. We find as a matter of law that these acts by agents of the State were an exercise of dominion and control over the property and constituted a proper and effective levy *(Rodgers v Bonner,* 45 NY 379; *Bond v Willett, supra; Matter of Alcor, Inc. [Telemation, Inc.],* 45 AD2d 795). It is not essential that the execution sale be conducted within the lifetime of the execution *(Ansonia Brass & Copper Co. v Conner,* 103 NY 502, 511). The six-month period between the levy and sale is insufficient in this case to render the lien dormant (6 Weinstein-Korn-Miller, NY Civ Prac, par 5234.11). Further, the failure of the State to file a return of the warrant with the commission (Tax Law, § 1141, subd [b]; CPLR 5230, subd [c]) is

to be deemed a mere irregularity insufficient to defeat this otherwise validly acquired State tax lien. Accordingly, since defendants' failure to file timely permitted the State to obtain a superior interest in the collateral, plaintiff is entitled to summary judgment to the extent of the collateral lost.

Defendants assert that the Federal tax lien in the amount of $33,141.64 is invalid because there has been no showing that the Federal Government made a demand for payment and, alternatively, that the Federal tax lien was extinguished in the mortgage foreclosure suit. The Federal tax lien was filed on February 4, 1975 with the Cayuga County Clerk and on February 7, 1975 with the Secretary of State and was superior to the plaintiff's interest. Defendants do not now allege that no demand was made; rather they assert that there is no evidence in the record that such a demand was ever made. Contrary to defendants' allegations that neither they nor plaintiff argued the effect or validity of the Federal tax lien at Special Term, plaintiff alleged in its complaint and in its motion for summary judgment that its collateral was impaired as a result of the Federal tax lien. In their argument at Special Term defendants did not question the sufficiency of the demand. Thus they have waived the right to raise this issue for the first time on appeal (Telaro v Telaro, 25 NY2d 433, 438; Pi Lambda Phi Fraternity v Seneca Beta Corp., 54 AD2d 1127; Runals v Johnson, 52 AD2d 1049). Finally, we find no basis upon which it can be held that the Federal tax lien on the hotel personalty was extinguished in the mortgage foreclosure or was otherwise abandoned.

Although defendants' failure to perfect plaintiff's security interest in the hotel's personalty resulted in plaintiff's interest being subordinated to the $33,141.64 Federal tax lien and the $14,391.03 February 18, 1975 State tax lien, inasmuch as the sale of the taxpayer's personal property yielded $47,431.38 after expenses, it is for this amount, rather than the greater amount of the intervening liens, that summary judgment in favor of the plaintiff should be granted.

Accordingly, plaintiff should have summary judgment in the amount of $47,431.38.

MARSH, P. J., MOULE, DILLON and WITMER, JJ., concur.

Order unanimously modified, in accordance with opinion by CARDAMONE, J., and as modified affirmed, without costs.