■ LOUISE CORLEY, Appellant, v BRUCE J. MILLER, Respondent.—In an action to recover damages for legal malpractice, the plaintiff appeals, by permission, from an order of the Appellate Term for the Ninth and Tenth Judicial Districts, dated July 23, 1985, which affirmed a judgment of the County Court, Suffolk County (Hanofee, J.), dated May 16, 1983, which granted the defendant's motion to set aside a jury verdict in the plaintiff's favor in the principal sum of $171,343, and dismissed the complaint.

Ordered that the order dated July 23, 1985 is reversed, on the law, with costs, the judgment dated May 16, 1983 is vacated, the motion to set aside the verdict is denied, the verdict in favor of the plaintiff on the issue of liability is reinstated, the plaintiff is awarded judgment in the principal sum of $79,750, pursuant to a stipulation between the parties entered into at the trial, and the matter is remitted to the

County Court, Suffolk County, for the entry of an appropriate judgment.

In August 1973 the plaintiff sold certain premises, which included a working restaurant. The sales price was $197,500, of which she received $45,000 in cash and took back a mortgage for $152,500. The mortgage agreement provided that the mortgagor was to keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee. If there were a fire loss, the insurer was to provide payment to both the plaintiff and the purchaser of the premises. The purchaser obtained two policies of fire insurance, which both listed the plaintiff as the mortgagee, in care of the defendant at his law office. The defendant, an attorney, had represented the plaintiff during the transaction for the sale of the premises.

On February 20, 1974, a fire occurred in the restaurant, destroying it. By letter dated April 5, 1974, the purchaser informed the plaintiff that it intended to exercise its right to retain the insurance proceeds and apply them towards rebuilding the restaurant. A rider in the mortgage agreement gave the mortgagor/purchaser such a right, providing as follows: "In the event of fire or other casualty loss wherein the then owner of the subject premises shall have the right to receive insurance proceeds in complete or partial compensation for said loss, the then owner shall have the right to apply such insurance proceeds received as a result of such loss to repair and rebuild the damaged premises encumbered hereby. The then owner shall elect to repair the structures damaged, in writing, within ninety days after the occurrence of the casualty provided that all the proceeds from the insurance company are used to repair the damage, and further provided that upon such repair the mortgagee's security shall not have been substantially impaired".

The defendant proposed in a letter to the owner's attorney a manner of preserving and protecting the plaintiff's collateral while the restaurant was being rebuilt. He testified at the trial that among the options which would accomplish this purpose was having the insurance proceeds used toward rebuilding the restaurant or reducing the mortgage balance.

The defendant was discharged by the plaintiff by letter dated September 12, 1975, following his attempt to have the plaintiff waive any right she may have had to the insurance proceeds. It was established at the trial that drafts from two insurance companies had been received by an adjustment company in the total sum of $79,750. One of the drafts was made payable to the restaurant and to the adjustment com-

pany; the other listed the plaintiff as one of the payees. The first draft was cashed soon after its receipt by the purchaser and the adjustment company. The second draft was forged, the plaintiff never having indorsed it; the defendant did not learn of this forgery until years after he had been discharged. The plaintiff never received any money from the insurance proceeds nor was the restaurant rebuilt during the time that the defendant represented her.

The plaintiff presented expert testimony at the trial of this legal malpractice action as to the defendant's alleged negligence and as to the steps that the defendant should have taken to protect the plaintiff's interests.

The jury ultimately returned a verdict for the plaintiff in the principal sum of $171,343. The trial court granted the defendant's motion to set aside the verdict and dismissed the complaint. The Appellate Term affirmed the judgment and this court granted leave to appeal from that order.

We reverse. Both the trial court and the Appellate Term, relying on testimony by an appraiser, held that the plaintiff had not been damaged inasmuch as the value of the premises at the time she subsequently foreclosed the mortgage exceeded the amount of the mortgage debt. There was conflicting evidence of the highest rank on value (see, Plaza Hotel Assocs. v Wellington Assocs., 37 NY2d 273, 277, rearg denied 37 NY2d 924) which the jury could have rationally relied on in reaching its verdict. It was only for the jury to weigh the credibility of the appraiser's opinion, and not for the trial court or Appellate Term to do so (see, Topel v Long Is. Jewish Med. Center, 76 AD2d 862, affd 55 NY2d 682). In addition, the jury could fix a higher or lower valuation than the expert, as long as its valuation was supported by the weight of the credible evidence (see, Kurnick v State of New York, 54 AD2d 1098, 1099).

We also reject, as did the Appellate Term, the defendant's contention that the plaintiff's failure to move for a deficiency judgment in the mortgage foreclosure action barred recovery in this legal malpractice action based upon the statutory presumption that the mortgage debt is deemed fully satisfied when a timely motion is not made (RPAPL 1371). A policy of insurance taken out by an owner to protect his mortgage is not a separate insurance of the debt, but is a separate security for the debt (Fields v Western Millers Mut. Fire Ins. Co., 290 NY 209, mot to amend remittitur granted 290 NY 872). If the mortgagee bids in at the foreclosure sale for less than the

mortgage debt and fails to obtain a deficiency judgment for the balance, the mortgagee forfeits any right to enforce payment thereof from any other security *(Whitestone Sav. & Loan Assn. v Allstate Ins. Co.,* 28 NY2d 332). Consequently, such a mortgagee is barred from recovering insurance proceeds from the insurance carrier or mortgagor *(see, Moke Realty Corp. v Whitestone Sav. & Loan Assn.,* 82 Misc 2d 396, 397-398, *affd* 51 AD2d 1005, *affd* 41 NY2d 954; *Sportsmen's Park v New York Prop. Ins. Underwriting Assn.,* 97 AD2d 893, *affd* 63 NY2d 998). However, the present action was not commenced to recover any deficiency in the mortgage debt from any party who had posted security for the debt, but, rather, was instituted to recover damages from the plaintiff's former attorney to cover the loss sustained by the plaintiff because of the defendant's negligent failure to safeguard separate security for the debt, i.e., the insurance proceeds *(see, Marine Midland Bank-Central v Gleason,* 62 AD2d 429, *affd* 47 NY2d 758; *French Evangelical Church v Borst,* 22 AD2d 511). Accordingly, RPAPL 1371 does not apply to the instant action.

Moreover, whether malpractice has been committed is normally a factual determination to be made by the jury *(see, Grago v Robertson,* 49 AD2d 645, 646). There was a substantial amount of evidence which the jury could have relied upon in finding that the defendant was negligent. A prima facie case of malpractice having been presented, which then became a question for the jury, it was error for the trial court to substitute its judgment for that of the jury *(see, Noia v De Rosa,* 78 AD2d 789, 790, *affd* 54 NY2d 631). Further, the verdict in favor of the plaintiff was not against the weight of the evidence. Therefore, the verdict should be reinstated.

At trial, the parties entered into an enforceable stipulation "that in the event of a verdict by the jury in excess of the amount contained in the ad damnum clause in the sum of $79,750; that it is agreed that a judgment may be entered for $79,750. With any interests *[sic]*, costs or disbursements which the Clerk may permit". In view of this stipulation, the matter is remitted for entry of a judgment in favor of the plaintiff, in the principal sum of $79,750. Thompson, J. P., Brown, Niehoff and Rubin, JJ., concur.