OPINION OF THE COURT
Franklin R Weissberg, J.
This is an action by a law firm to collect legal fees arising from its representation of the defendants in two Florida State proceedings. The plaintiff has moved for summary judgment against the defendant VSI International, Inc. (VSI) on its second cause of action seeking $206,954.22 for an account stated and dismissing the defendants’ counterclaims for failure to state a cause of action. The defendants have cross-moved for an order compelling the plaintiff to accept their first amended answer and counterclaim.
Background
The defendant VSI is a Florida corporation engaged in the wholesale sunglass and reading glass business. Defendant Myron Orlinsky is VSI’s chief executive officer. In 1989, the defendants retained the plaintiff law firm as patent and trademark counsel. In 1990, they retained plaintiff to represent them in two proceedings brought against them in Florida State court concerning VSI’s design of hangers used to display reading glasses. VSI was accused of patent, trademark and trade dress infringement.
Up to the end of 1992, the defendants had paid a substantial portion of their legal bills. However, thereafter they only made one payment of $1,750.11 while incurring additional legal bills in excess of $150,000. As of September 29, 1993, they owed the plaintiff almost $200,000 in legal fees. As a result, the plaintiff applied for an order granting it leave to withdraw as the defendants’ counsel in the Florida litigation. By order dated October 21, 1993, leave to withdraw was granted. The plaintiff turned over its litigation files to new counsel without asserting an attorney’s retaining lien.
Aside from a $495 payment in July 1996, the defendants failed to make any further payments. The plaintiff commenced this proceeding in New York State Supreme Court in August 1996. The firm seeks a total of $206,954.22, with interest, costs and attorney’s fees. It asserts four causes of action. The first cause of action is against both defendants for breach of contract, the second is against only VSI for an account stated, *115 the third is against both defendants for quantum meruit and the fourth is against only Mr. Orlinsky for liability for the debts which VSI owes to plaintiff.
The defendants moved to dismiss the complaint for lack of personal jurisdiction. By order dated August 20, 1997, the Supreme Court (Charles Edward Ramos, J.) denied the motion, finding that the defendants’ business contacts with New York State were sufficient to invoke the State’s long-arm jurisdiction.
The defendants thereafter responded to the complaint by answer and counterclaims dated December 3, 1997. In their first counterclaim, they allege that the plaintiff had committed legal malpractice by failing to advise them of the possibility that their comprehensive general liability insurance policies might cover the costs of the Florida litigation. The defendants assert that counsel which replaced the plaintiff immediately, upon retention, advised them of this possibility and that, on February 3, 1994, they contacted their insurance carrier which agreed that the defendants’ policies covered the costs of the intellectual property claims which had been brought against them. The carrier, however, denied coverage for all litigation expenses which had been incurred prior to the date that the insurance claim was filed. In their second counterclaim, the defendants assert that the plaintiff breached its fiduciary duty by failing to advise them about the possibility of insurance coverage.
The plaintiff then brought this motion for summary judgment against VSI on the second cause of action asserting an account stated and for dismissal of the counterclaims. Shortly thereafter, the defendants served plaintiff with an amended answer and counterclaims. This amended pleading added an allegation that prior to the commencement of the Florida proceedings, the plaintiff had committed malpractice by failing to advise the defendants of the potential costs, liability and damages which they could incur if they marketed and used the disputed hanger tags. The plaintiff refused to accept the amended pleadings on the ground that leave of court was necessary. As a result, the defendants have cross-moved for an order compelling plaintiff to accept the pleadings or, in the alternative, for permission to serve plaintiff.
Discussion
An “account stated” is “an agreement between the parties to an account based upon prior transactions between them with *116 respect to the correctness of the separate items composing the account and the balance due”. (Chisholm-Ryder Co. v Sommer & Sommer, 70 AD2d 429, 431 [4th Dept 1979].) The receipt and retention of a plaintiffs accounts “without objection within a reasonable time, and agreement to pay a portion of the indebtedness, [gives] rise to an actionable account stated, thereby entitling plaintiff to summary judgment in its favor”. (Rosenman Colin Freund Lewis & Cohen v Edelman, 160 AD2d 626 [1st Dept 1990]; see also, Shea & Gould v Burr, 194 AD2d 369 [1st Dept 1993].)
The plaintiff alleges that it is entitled to summary judgment in its favor because the defendants never disputed their legal bills and, in fact, partially paid the total amount due. However, on a motion for summary judgment, evidence of an oral objection to an account rendered, made with some specificity, is enough to rebut an inference of an implied agreement to pay the stated amount. (See, Kaye, Scholer, Fierman, Hays & Handler v Russell Chems., 246 AD2d 479 [1st Dept 1998]; Collier, Cohen, Crystal & Bock v MacNamara, 237 AD2d 152 [1st Dept 1997].) Here, the defendants have submitted two affidavits from defendant Orlinsky which detail numerous conversations he allegedly had with Bert J. Lewen, a member of the plaintiff law firm, in which he repeatedly complained about and disputed the legal bills which the defendants were receiving from the plaintiff. Since these affidavits raise issues of fact which can only be resolved at trial, they are sufficient to defeat the plaintiffs summary judgment motion.
The plaintiff has also moved, pursuant to CPLR 3211 (a) (7), to dismiss the defendants’ counterclaim which asserts that the firm committed legal malpractice by failing to advise the defendants of the possibility that their insurance might cover the costs of the intellectual property litigation in Florida. The plaintiff argues that its professional responsibilities and duties as attorneys for the defendants only extended to the actual litigation and that it was not incumbent upon the law firm to advise the defendants about matters which related to the financing of the litigation. The plaintiff argues that the defendants, as the holders of the insurance policy, had the sole responsibility for realizing that the policy might cover the lawsuits against them and for submitting a claim for coverage.
In opposing the plaintiffs motion to dismiss their counterclaim, the defendants argue that an attorney who is retained to represent a client in litigation is not merely a technician whose responsibilities, as plaintiff suggests, are limited to legal *117 strategy. They assert that an attorney is also a counselor who has a duty to advise a client who has been sued on all matters pertaining to the litigation so as to minimize the client’s liability. Thus, the defendants argue that they would not have incurred the plaintiffs legal fees had the firm advised them about the possibility that the claims against them were covered by insurance. They point out that they did not incur legal fees after February 1994 because the law firm which replaced the plaintiff provided them with prompt and proper advice about their insurance coverage.
An attorney may be liable for malpractice if it is established that his or her conduct fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his or her profession. (See, Da Silva v Suozzi, English, Cianciulli & Peirez, 233 AD2d 172, 174 [1st Dept 1996].) Whether malpractice has been committed is ordinarily a factual determination to be made by the jury. (See, Corley v Miller, 133 AD2d 732, 735 [2d Dept 1987].) Moreover, “unless the ordinary experience of the fact-finder provides sufficient basis for judging the adequacy of the professional service * * * or the attorney’s conduct falls below any standard of due care * * * expert testimony will be necessary to establish that the attorney breached a standard of professional care and skill”. (Greene v Payne, Wood & Littlejohn, 197 AD2d 664, 666 [2d Dept 1993].) The plaintiff has failed to cite a single case supporting its contention that, as a matter of law, it did not owe the defendants a duty to inquire about their insurance coverage. The court has been unable to find any New York authority on this point. However, in a recent decision, the Supreme Court of California found that for the purposes of the Statute of Limitations on legal malpractice claims, the plaintiff manufacturer was deemed to have suffered “actual injury” when its law firm failed to investigate its insurance coverage or advise the manufacturer to notify its insurer of the underlying suit. (See, e.g., Jordache Enters. v Brobeck, Phleger & Harrison, 18 Cal 4th 739, 958 P2d 1062 [1998].) It was implicit in the decision that, under certain circumstances, the failure of a law firm to inquire about its client’s insurance is actionable.
This court is persuaded that the plaintiffs failure to investigate the defendants’ insurance coverage or alert them to the potential availability of insurance to cover their litigation expenses may have constituted legal malpractice. The issue of whether the plaintiff committed legal malpractice raises numerous questions of fact, including but not limited to, the *118 sophistication of each party regarding potential insurance coverage and the scope of the plaintiffs engagement. It is particularly noteworthy that counsel which succeeded the plaintiff promptly pursued the insurance issue to the defendants’ substantial benefit.
Therefore, the issue of whether or not the plaintiff breached a standard of professional care and skill can only be resolved at trial. The plaintiffs motion to dismiss the counterclaim with respect to this issue is denied.
As to the defendants’ cross motion for an order directing that the plaintiff accept their amended pleadings, the court agrees with the defendants that they are entitled to serve these pleadings without leave of court since the plaintiffs motion to dismiss their original counterclaim tolled the plaintiffs time to answer the counterclaim which, under CPLR 3025 (a), also tolled the defendants’ time to amend their pleadings as of right. (See, Sholom & Zuckerbrot Realty Corp. v Coldwell Banker Commercial Group, 138 Misc 2d 799, 800-801 [Sup Ct, Queens County 1988].)
The plaintiff has also moved to dismiss the amended counterclaim. The law firm argues that the defendants’ allegation that the plaintiff had committed malpractice by failing to advise the defendants of the potential costs, liability and damages which they could incur if they marketed and used the disputed hanger tags is barred by the Statute of Limitations and, in addition, fails to state a cause of action.
As to the Statute of Limitations, CPLR 203 (d) provides that a counterclaim is not barred “if it was not barred at the time the claims asserted in the complaint were interposed, except that if the * * * counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted, in the complaint depends, it is not barred to the extent of the demand in the complaint”. Here, the Florida litigation against the defendants commenced in December 1990. As of the commencement of that litigation, the defendants should have become aware, if they had not already, of the potential costs, liability and damages of their use of the hanger tags. Thus, the Statute of Limitations began to run as of this time. The defendants, however, never brought a legal malpractice claim against the plaintiff until the present action was commenced by the plaintiff in August 1996 and their counterclaim is thus barred by the three-year Statute of Limitations contained under CPLR 214. Nevertheless, since the plaintiffs claim is based on the legal services which it provided to the *119 defendants and the counterclaim asserting a failure to inform arises from the alleged inadequacy of these legal services, the amended counterclaim is not barred, under CPLR 203 (d), to the extent of the demand asserted in the complaint.
Finally, the amended counterclaim clearly states a cause of action for legal malpractice. The failure of an attorney to provide material information to a client about the legal implications of the actions which the client is deciding whether to undertake falls squarely within an attorney’s obligations and duties. The plaintiff’s assertion that the defendants were, in fact, advised about the legal implications of marketing the disputed hanger tags and, in addition, were otherwise aware of the costs they would be exposing themselves to by doing so is more properly addressed in a summary judgment motion or at trial.
Accordingly, the plaintiff’s motion for summary judgment on the second cause of action is denied. The defendants’ cross motion to require the plaintiff to accept its amended answer and counterclaims is granted. The plaintiff’s motion to dismiss the counterclaims is denied with the exception that the defendants’ assertion of legal malpractice with respect to the plaintiff’s alleged failure to advise them of all of the legal implications of marketing the hanger tags is limited to the amount of damages sought in the complaint.