Jordan *v.* Everett and Claiborne *v.* Everett.

## JORDAN *v.* EVERETT *and* CLAIBORNE *v.* EVERETT.

### (·*Nashville.* February 6, 1894.)

1. SEPARATE ESTATE. *Priority of creditors' liens thereon.*

   Between creditors of a married woman whose several debts constitute chaiges upon her separate estate, that one secures the first lien, and is entitled to priority of satisfaction, whose suit in equity for enforcement of his charge is first perfected into a *lis pendens.* (*Post, pp. 391–395.*)

   Cases cited and approved: Petway *v.* Hoskins, 12 Lea, 107; Tharpe *v.* Dunlap, 4 Heis., 685.

2. SAME. *Jurisdiction of Chancery Courts over.*

   The jurisdiction of Chancery Courts to enforce payment of debts charged upon a married woman's separate estate is inherent and exclusive. It has not been changed by statute. (*Post, pp. 394, 395.*)

   Code construed: §§ 5022, 5026–5030 (M. & V.); §§ 4279, 4283–4287 (T. & S.); Graham *v.* Merrill, 5 Cold., 632; Cowan *v.* Dunn, 1 Lea, 68; Brooks *v.* Gibson, 7 Lea, 271; Jordan *v.* Keeble, 85 Tenn., 416; Warren *v.* Freeman, 85 Tenn., 513; Eckerly *v.* McGhee, 85 Tenn., 661.

3. SAME. *Pleadings.*

   And the creditor ripens his charge upon the separate estate into a fixed lien thereon, and becomes entitled to priority of payment, by filing his bill and securing issuance and service of process, although he had not previously obtained judgment upon his debt, and did not make affidavit to his bill, and did not seek or obtain attachment or injunction thereunder. (*Post, pp. 395, 396.*)

   Cases cited and approved: Petway *v.* Hoskins, 12 Lea, 107; Brooks *v.* Gibson, 7 Lea, 271; Cowan *v.* Dunn, 1 Lea, 68; Shelton *v.* Johnson, 4 Sneed, 680; White *v.* Railroad, 7 Heis., 519; Roberts *v.* Francis, 2 Heis., 133; Tharpe *v.* Dunlap, 4 Heis., 685; Jordan *v.* Keeble, 85 Tenn., 416.

---

### FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

J. M. Anderson for Jordan.

J. B. Daniel for Claiborne.

Wilkes, J.   Thomas H. Everett and wife, Mary L. Everett, executed a note to Mrs. Julia M. Jordan June 16, 1890.   Afterwards, October 2, 1890, May 5, 1891, and June 16, 1891, they executed other notes to A. S. Claiborne.  July 14, 1891, they executed still another note to A. S. Claiborne, agent.

Mary L. Everett, wife of Thomas H. Everett, owned a separate estate, consisting of houses and lots in Nashville, and in each of the several notes executed by her she charged her separate estate with its payment.

Both before and after these notes were executed Thomas H. Everett joined with his wife, Mary L., in several mortgages and deeds of trust upon the property in which Mary L. had a separate estate.

On September 30, 1891, Mrs. Julia M. Jordan filed her bill in the Chancery Court, at Nashville, against Thomas H. Everett and wife, Mary L., and others, alleging the execution of the notes to her, and that it was a charge upon the separate estate of Mrs. Everett, setting out the real estate by specific description; alleging also that it was incumbered by mortgages and deeds of trust, and that, in consequence of these mortgages, Mrs. Everett had only an equitable interest remaining in her, and charging that, by the execution of the note

by Mrs. Everett, charging her separate estate for its payment, she created a lien upon such separate estate, and seeking to subject the interest of Mrs. Everett in the separate property to the satisfaction of the note.

No judgment had been rendered on the note in favor of Mrs. Jordan, no fraud was charged upon the part of Everett and wife, no attachment or injunction was prayed for, and the bill was not sworn to.

Subsequent to the filing of this bill by Mrs. Jordan, and on October 7, 1891, and October 12, 1891, A. S. Claiborne and A. S. Claiborne, agent, filed two bills in the same Court against the same parties, alleging the execution to him by Everett and wife of the notes, as before stated; that suit had been brought, and judgments obtained upon them against Everett and wife before a Justice of the Peace; that executions had been issued upon the judgments, and had been returned *nulla bona.* These bills also alleged that Everett and his wife had become insolvent, and that they were fraudulently disposing of their property. The bills were sworn to, and an injunction was prayed, granted, and issued in each case.

No serious defense was made by the Everetts to either suit, and final decrees and order of sale was had in each, the decrees in favor of Claiborne being rendered April 30, 1892, and in favor of Mrs. Jordan, June 20, 1892.

The real estate was sold, and, by agreement,

$1,000 of Union Mills stock and the note of Hamilton Parks, purchaser, for $2,145 was substituted for the real estate, and are held under the orders of the Chancery Court, and, by consent of all parties interested, in lieu of such real estate, and subject to all the liens and equities existing against the real estate.

The causes were all consolidated, so as to raise and determine the question of priority between Mrs. Jordan and A. S. Claiborne as to this fund, and, on the hearing, the Chancellor held that Mrs. Jordan had a prior lien, and was entitled to be first paid, and Claiborne appealed, and has assigned the following error: "That the Court erred in holding this lien of Mrs. Jordan prior in point of time to that acquired by Claiborne, and in ordering her debt to be first paid, because Claiborne was a judgment creditor of the Everetts, and Mrs. Jordan was not; Claiborne's bill alleged fraud, and Mrs. Jordan's did not; Claiborne asked for and obtained injunction, and Mrs. Jordan did not; Claiborne's decree for sale was obtained some fifty days before Mrs. Jordan's, and, because Mrs. Jordan's suit was not of such a character as to create a lien by *lis pendens*."

Claiborne's bills are filed under §§ 5026 to 5030, inclusive, of the Code (M. & V. compilation), and on the theory that these sections provide an exclusive remedy for the enforcement of debts of this character, and, inasmuch as his bills conform to the requirements of these sections, and Mrs.

Jordan's bill does not so conform, he is entitled to have priority, and that Mrs. Jordan obtained no right to priority by first filing her bill, if, indeed, she acquired any lien whatever.

The Act of 1832, from which these sections (5026 to 5030) had their origin, was not intended to abridge or curtail in any way the original jurisdiction of the Chancery Court, as it then existed, but its object was to enlarge and extend the power and jurisdiction of that Court to subject equitable interests that, prior to that time, had been exempt.

The article in which they are found relates to the exclusive jurisdiction of the Chancery Court, and the first section of this article reads as follows: "The Chancery Court shall continue to have all the powers, privileges, and jurisdiction properly and rightfully incident to a Court of Equity by existing laws." M. & V. Code, § 5022. See, also, *Graham* v. *Merrill*, 5 Cold., 632; *Cowan* v. *Dunn*, 1 Lea, 68; *Brooks* v. *Gibson*, 7 Lea, 271.

When Mrs. Everett signed the notes in controversy, she created, in each instance, a charge against her separate estate, which could be enforced against such separate estate, but it in no way enlarged her personal liability for the debt. The property itself was made the debtor, and not the married woman personally. This charge against her separate estate could only be enforced against it by suit in chancery, and not by judgment and execution at law. *Jordan* v. *Keeble*, 1 Pickle, 416;

*Warren* v. *Freeman*, 1 Pickle, 513; *Eckerly* v. *Mc-Gee*, 1 Pickle, 661.

The mere execution of the note, binding the separate estate, did not create a lien, but only a charge, upon such separate estate, and there is no priority, as between these charges, depending upon and fixed by the date when the notes were executed, nor is such charge in any way aided by the recovery of a judgment at law upon the note.

A lien is, however, fixed upon such separate estate, and any equitable interest therein, whenever a proper bill is filed in the Chancery Court to subject such separate estate, legal or equitable, to the payment and satisfaction of such note, provided the separate estate sought to be charged is set out and described by proper designation and description.

In the case at bar, summons to answer was sued out the same day the bill was filed, and was duly executed, and the lien dates from the filing of the bill and suing out of the summons.

The proceeding is in the nature of a proceeding *in rem* to subject the specific property mentioned in the bill to the payment of the debt sued on, and is notice to the world of these facts, and creates a lien *lis pendens*.

In such case, no affidavit to the bill, no judgment at law, no attachment or injunction, are necessary to fix the lien. *Petway* v. *Haskins*, 12 Lea, 107; *Brooks* v. *Gibson*, 7 Lea, 271; *Cowan* v. *Dunn*, 1 Lea, 68; *Shelton* v. *Johnson*, 4 Sneed,

680; *White* v. *N. & N. W. R. R.*, 7 Heis., 519; *Roberts* v. *Francis*, 2 Heis., 133; *Tharp* v. *Dunlap*, 4 Heis., 685; *Jordan* v. *Keeble*, 1 Pickle, 416; Bennett on Lis Pendens, Sec. 142; 2 Pomroy's Equity, Sec. 635; 4 King's Digest, Secs. 7885, 3.

While all the notes executed by Mrs. Everett in controversy in this cause created charges upon her separate estate, none of them created any lien by its execution or by the rendition of judgment upon it.

Mrs. Jordan, by filing her bill and taking out summons, acquired a lien upon the separate estate of Mrs. Everett. So likewise did Claiborne, but the lien of the latter stands upon the same basis as that of the former, and his attachment, injunction, and judgment at law gave him no prior right or superior equity. The question is simply one of diligence among creditors having equal rights, and the familiar maxim, "First in time, first in right," applies. *Petway* v. *Haskins*, 12 Lea, 107; *Tharp* v. *Dunlap*, 4 Heis., 685.

The decree of the Chancellor is correct, and is affirmed, and the cause is remanded to be further proceeded in. The costs of the appeal will be paid by Claiborne, individually and as agent.