**NASHVILLE GOLF & ATHLETIC CLUB, Plaintiff–Appellee,**

v.

**Joe B. HUDDLESTON, Commissioner of Revenue, State of Tennessee, Defendant–Appellant.**

Supreme Court of Tennessee, at Nashville.

July 20, 1992.

Charles W. Burson, Atty. Gen. & Reporter, Pamela Bingham Broussard, Asst. Atty. Gen., Nashville, for defendant-appellant.

Charles A. Trost, Joseph A. Woodruff, Waller, Lansden, Dortch & Davis, Nashville, for plaintiff-appellee.

## OPINION

ANDERSON, Justice.

The first question raised in this sales tax direct appeal by the Commissioner of Revenue is whether "initiation deposits," which are paid by members upon joining the taxpayer's club, are taxable under Tenn.Code Ann. § 67–6–212(a)(1) as sales at retail of "dues or fees to membership sports and recreation clubs," or whether they are non-taxable loans or deposits. If the deposits are taxable sales, a second question to be answered is whether they are nevertheless exempt from taxation under Tenn.Code Ann. § 67–6–330(a)(14) as "membership assessments for capital improvements." A final question is whether the taxpayer's extra $1.00 charge for golf cart rentals, which was used to install concrete cart paths, is also exempt from sales taxes under Tenn.Code Ann. § 67–6–330(a)(14) as "membership assessments for capital improvements."

The Chancellor held invalid the Commissioner's assessment of sales taxes, finding that the "initiation deposits" were loans rather than taxable sales at retail of dues or fees for membership, and that the additional $1.00 charge for each golf cart rental was exempt from taxation as a membership assessment for capital improvements. We have instead determined that the "initiation deposits" are taxable under Tenn.Code Ann. § 67–6–212(a)(1) as sales at retail of dues or fees for membership. However, we have concluded that the deposits received after July 1, 1985, the effective date of § 67–6–330(a)(14), are exempt from taxation as membership assessments for capital improvements. We have also concluded that the additional $1.00 charge for each golf cart rental is exempt from sales taxes as a membership assessment for capital improvements. Accordingly, we reverse the Chancellor's finding that the deposits are non-taxable loans, and hold that the initiation deposits received before July 1, 1985, are taxable.

## FACTUAL BACKGROUND

The taxpayer, Nashville Golf & Athletic Club, is a Tennessee partnership composed of two general partners, Charles W. Whittemore and Charles W. Whittemore, Jr. The Whittemores formed the partnership in 1979 for the purpose of purchasing a golf course known at that time as Crockett Springs Club in Brentwood, Tennessee.

When the partnership purchased the property in 1979, the Crockett Springs Club was bankrupt and had been unable to complete the golf course and other capital improvements. As a result, there were very few members of Crockett Springs Club when the partnership assumed ownership.

In order to revitalize the club, capital was required to complete the golf course, build a clubhouse, and make other improvements. To raise the necessary capital and attract new members, the partners made a capital contribution of $1,229,000.00, and decided to employ a relatively new type of membership system whereby instead of

purchasing an equity membership by paying an initiation fee, the members would pay an "initiation deposit" which would be returned to them in thirty years. The partners determined this was an easier way to raise money for capital improvements than the method used by equity membership clubs, where the members are assessed large sums when capital improvements are needed.

Under the "initiation deposit" system established and documented in the membership application, a member agrees to give the partnership an interest-free sum of money which will be repaid thirty years after the date of the deposit. In the event a member decides to leave the club before the thirty-year period expires, the resigning member is entitled to receive at the time of leaving the lesser of one-half of the deposit made by that member or $2,000.00, but only if the resigning member finds someone to take his or her place. If a resigning member cannot find someone to take his or her place, the entire initiation deposit is refunded at the end of the thirty-year period. In the event that a member dies prior to expiration of the thirty-year period, then the member's estate is entitled to receive the refund, but only at the end of the thirty-year period.

In addition to the "initiation deposits," the partners decided to create revenue for the club in two other ways. The first method involved charging the members monthly dues and certain user fees, such as $6.50 for a golf cart rental, in a manner similar to equity membership clubs. The second method was to add an additional $1.00 charge to each golf cart rental to replace the existing cart paths.

After operating for several years, Nashville Golf & Athletic Club was audited and assessed a deficiency in sales taxes for the period of August 1983 to June 1987, covering the additional $1.00 charges for golf cart rentals and initiation deposits received from members.

The taxpayer filed this action in the Williamson County Chancery Court to contest the assessment of $45,844.36 in taxes, contending that the additional $1.00 charges

for golf cart rentals and the initiation deposits were exempt from taxation under Tenn.Code Ann. § 67–6–330(a)(14) (Supp. 1985) as "membership assessments for capital improvements made by a recreation club or country club against its members." In addition, the taxpayer argued that the initiation deposits were non-taxable loans.

The Commissioner responded by contending that the additional $1.00 charges for golf cart rentals were not exempt as "membership assessments for capital improvements" because Nashville Golf & Athletic agreed to expense, rather than capitalize, the expenditure of part of these funds in a settlement with the I.R.S. over an audit of 1982 and 1983 federal tax returns. With respect to the initiation deposits, the Commissioner argued that they were not loans from the members, but rather taxable "[d]ues or fees to membership sports and recreation clubs." Tenn.Code Ann. § 67–6–212(a)(1) (Supp.1984). In addition, the Commissioner contended that the taxpayer could not claim that all of the initiation deposits were assessments for capital improvements because the taxpayer did not capitalize the expenditure of all of these funds on its federal tax returns.

At trial, the bulk of the taxpayer's proof consisted of the virtually undisputed testimony of a partner, Charles Whittemore, and the taxpayer's accountant, Alton E. Turnipseed. We summarize it below:

The partner, Charles Whittemore, testified that the money needed to pay salaries, electric bills, and other operating expenses came from monthly dues, user fees such as the $6.50 charges for golf cart rentals, and, if necessary, operating funds contributed by the partners. These funds, with the exception of the partners' capital contributions, are maintained in a general operating account. The money used to make capital improvements to the golf course came from the initiation deposits, the additional $1.00 charges for cart rentals, and the capital fund contributed by the partners. These funds, with the exception of the additional $1.00 charge for golf cart rentals, were maintained in a money market account sep-

arate from the every day operating account.

With respect to the initiation deposits, Whittemore testified that they were always used for capital improvements. As of 1987, Nashville Golf & Athletic had received $650,000.00 in initiation deposits since the club began in 1979, and had spent approximately $700,000.00 on capital improvements to the golf course and clubhouse over the same time period.

The individual initiation deposits received during the audit period of June 1983 to August 1987 ranged from $2,500.00 to $7,500.00; and despite the fact that the total was a substantial amount of money, the deposits were still not sufficient to cover the capital improvements made during the audit period. During the audit period, the taxpayer made capital improvements, which included: (1) the purchase of additional land for a driving range for $250,000.00, (2) the building of new cart paths, which have a useful life of ten to sixteen years, and (3) the sprigging of new Bermuda fairways, which have a useful life of eight to fourteen years barring bad winters.

For federal income tax purposes, the initiation deposits were carried on the taxpayer's books as long-term debts and not as income. In addition, the expenditures of the initiation deposits were carried on the taxpayer's books as capital expenditures. The funds spent on the new cart paths, which were accumulated from the additional $1.00 charges for cart rentals, were also carried on the taxpayer's books as capital expenditures.

In addition, although the funds from the additional $1.00 charges for golf car rentals were kept in the partnership's operating account, there were separate bookkeeping entries to account for the money. When the cart paths were built, all of the money that had been accumulated from the $1.00 charges was taken out of the operating account and used to pay for the paths. Moreover, although the additional $1.00 charges raised a substantial amount of money, they were still not sufficient to cover the capital cost of the new cart paths.

With respect to the I.R.S. audit of 1982 and 1983, the I.R.S. did not take issue with the partnership's treating the initiation deposits as long-term debts. Rather, the I.R.S. felt that the partnership was trying to stretch its depreciation schedules too far so it could protect itself in the future when it would be receiving additional income. As part of the settlement with the I.R.S., Whittemore said the partnership agreed to reduce its depreciation schedules by several years, and to treat expenditures for sprigging the fairways and building the cart paths during the federal audit period as deductible operating expenses, rather than as capital improvements.

## TRIAL COURT FINDING

In a memorandum opinion, the Chancellor found that the assessment relating to the initiation deposits ($43,290.54) was invalid, because the deposits were not taxable "dues or fees to a membership sports or recreation club" under Tenn.Code Ann. § 67–6–212(a)(1), but were instead loans from members that are not taxed by the Retailers' Sales Tax Act. As a result, the Chancellor made no finding with respect to whether the initiation deposits qualified for the exemption for "membership assessments for capital improvements" under Tenn.Code Ann. § 67–6–330(a)(14).

With regard to the portion of the assessment relating to the additional $1.00 charged for each golf cart rental ($2,553.82), the Chancellor found that:

NG & AC assessed its members a charge of one dollar each time a member rented a golf cart. The funds raised from this assessment were used by by NG & AC for golf cart path improvements. The members were informed of this assessment by way of the club's periodic newsletters. Expenses for golf cart path improvements were initially capitalized by NG & AC for its income tax and financial record keeping purposes. The Internal Revenue Service, after audit, required NG & AC to recharacterize these expenditures as ordinary and necessary business expenses.

The funds received by NG & AC from its members from the assessment charged on the rental of golf carts were used for capital improvements and thereby qualify for the exemption provided by Tenn.Code Ann. § 67–6–330(a)(14).

Accordingly, the Chancellor declared invalid the entire contested portion of the sales tax assessment ($45,844.36), and awarded the taxpayer expenses and attorneys' fees in accordance with Tenn.Code Ann. § 67–1–1803(d).

## TAXATION OF MEMBERSHIP INITIATION DEPOSITS

■ The first issue we address on this appeal is whether the Chancellor correctly found that the initiation deposits were non-taxable loans, rather than taxable "dues or fees for membership." In 1984, the Legislature extended the Retailers' Sales Tax Act to cover certain charges for amusement, recreation, and athletic events. *See* 1984 Tenn. Pub. Acts ch. 13. The 1984 Act provides, in part, that:

(a) There is levied a tax at a rate equal to the rate of tax levied on the sale of tangible personal property at retail by the provisions of § 67–6–202 of the gross receipts or gross proceeds of each sale at retail of the following:

(1) Dues or fees to membership sports and recreation clubs, including free or complimentary dues or fees, when such are made in connection with a valuable contribution to any such establishment or organization, which shall have the value equivalent to the charge that would otherwise have been made, including any fees paid for the use of facilities or services rendered at a health spa or club or any similar facility or business.

Tenn.Code Ann. § 67–6–212(a)(1). This section of the 1984 Act became effective on June 1, 1984. 1984 Tenn. Pub. Acts ch. 13, § 9.

The Commissioner contends that the "initiation deposits" paid by members of Nashville Golf & Athletic upon joining the club clearly fall within the amusement tax as "dues or fees to membership sports and recreation clubs." To support his contention, the Commissioner points out that although "membership dues or fees" are not defined in the Retailers' Sales Tax Act, subsection 4 of Sales and Use Tax Rule 1320-5-1-1.16 (Rule 116) provides that "[m]embership dues or fees shall include initiation fees and any other fees required for membership." Since an initiation deposit is a prerequisite to joining Nashville Golf & Athletic, the Commissioner argues that the initiation deposits qualify as "any other fees required for membership" under Rule 116.

■ While it is true that Rule 116 defines "membership dues or fees" to include "initiation fees and any other fees required for membership," it is fundamental that the Commissioner cannot enlarge the scope of a taxing statute by regulation. *Volunteer Val–Pak v. Celauro*, 767 S.W.2d 635, 636 (Tenn.1989). Under Tenn. Code Ann. § 67–1–102 (1983 & 1989), the Commissioner is only authorized to prescribe reasonable rules and regulations not inconsistent with the taxing statute. However, in the absence of a clear showing that a rule is arbitrary or contrary to statute, a court should not substitute its judgment for the Commissioner's. *Pidgeon–Thomas Iron Co. v. Shelby County*, 217 Tenn. (21 McCanless) 288, 297, 397 S.W.2d 375, 378–79 (1965).

■ As the Commissioner correctly points out, nowhere in the Retailers' Sales Tax Act does the Legislature define "membership dues or fees," other than as including the items listed in Tenn.Code Ann. § 67–6–212(a)(1). We must, therefore, give the language used in § 67–6–212(a)(1) its common and ordinary meaning, since words employed by the Legislature in the enactment of tax statutes are to be taken in their natural and ordinary sense. *Covington Pike Toyota, Inc. v. Cardwell*, 829 S.W.2d 132 (Tenn.1992); *Western Pipeline Constr., Inc. v. Dickinson*, 203 Tenn. (7 McCanless) 248, 254, 310 S.W.2d 455, 458 (1958).

■ The tax imposed by § 67–6–212(a)(1) applies to "dues or fees to membership sports and recreation clubs, *including free*

*or complimentary dues or fees, when such are made in connection with a valuable contribution to any such establishment or organization.*" (Emphasis added.) Giving this language its common and ordinary meaning, we conclude that a reasonable interpretation of the statute is that, upon a sale by a sports or recreation club of the rights and privileges of membership, a tax is imposed even though no "dues or fees" are charged if, in connection with such a sale, the member is required to make "a valuable contribution to any such establishment or organization."

The initiation deposit required of a member of Nashville Golf & Athletic constituted an interest-free fund available to the taxpayer without limitation and returnable to the member after a thirty-year period. We conclude that the initiation deposit qualifies as a taxable "valuable contribution" required of a member to a sports or recreation club. Accordingly, we reverse the Chancellor's finding that the initiation deposits were non-taxable loans and hold that the initiation deposits are properly encompassed by Rule 116 as "any other fees required for membership."

For its argument that the deposits were non-taxable loans, the taxpayer relies on *Furniture Lease Co. v. Tidwell*, 495 S.W.2d 535 (Tenn.1973), which held that refundable deposits are not taxable unless and until they are applied by the taxpayer to satisfy a delinquent obligation of the depositor, thereby making the deposits non-refundable. *Id.*, 495 S.W.2d at 536. In *Furniture Lease Co.*, the issue was whether the forfeited portion of a deposit made in connection with a lease of tangible personal property was included in "the gross proceeds of all leases and rentals of tangible personal property" for purposes of Tenn.Code Ann. § 67–3024 (currently § 67–6–204). The taxpayer's reliance upon *Furniture Lease Co.* is misplaced because the statute involved in that case did not contain any provision comparable to § 67–6–212(a)(1) stating that the tax applies to "complimentary dues or fees" when a "valuable contribution" is made in connection with a sale of membership rights and privileges.

Accordingly, having found that the initiation deposits are taxable as valuable contributions for membership in a sports or recreation club under Tenn.Code Ann. § 67–6–212(a)(1), we turn now to the issue of whether the deposits, which were spent for capital improvements, qualify as "membership assessments for capital improvements" under Tenn.Code Ann. § 67–6–330(a)(14).

## MEMBERSHIP ASSESSMENTS FOR CAPITAL IMPROVEMENTS EXEMPTION

In 1984 Tenn. Pub. Acts ch. 13, in addition to extending the sales tax to cover certain charges for amusement, recreation and athletic events, the Legislature also created several exemptions from the new tax which were codified at Tenn.Code Ann. § 67–6–330. In 1985, the Legislature added another exemption to those exemptions already contained in § 67–6–330 for "membership assessments for capital improvements." *See* 1985 Tenn. Pub. Acts ch. 452, § 10. The exemption, which took effect on July 1, 1985, *see* 1985 Tenn. Pub. Acts ch. 452, § 15, provides that:

(a) There shall be exempt from the sale tax upon admission, dues or fees imposed by § 67–6–212:

. . . .

(14) Membership assessments for capital improvements made by a recreation club, community service organization or country club against its members.

Tenn.Code Ann. § 67–6–330(a)(14).

The taxpayer contends that the initiation deposits received after July 1, 1985, clearly fall within this exemption. We agree. The uncontroverted testimony of the partner Whittemore and the partnership's accountant Turnipseed show that the proceeds of the initiation deposits were kept in an account separate from ordinary revenue; that they were used to make capital improvements to the golf course; and that the expenditure of these funds was carried on the partnership's books as capital expenditures. In addition, the parties stipulated that "during the audit period after July 1,

1985, the taxpayer made expenditures for capital improvements to its facilities sufficient to offset the entire amount of initiation deposits received."

The Commissioner, however, contends that because the taxpayer did not capitalize as capital expenditures on its federal tax returns all of the expenditures for capital improvements made after July 1, 1985, the taxpayer cannot now claim that all of the initiation deposits received after July 1, 1985, were used to make capital improvements. We disagree.

■ There is nothing in the language of Tenn.Code Ann. § 67–6–330(a)(14) that requires a taxpayer to capitalize expenditures for capital improvements on its federal tax returns in order to be entitled to claim the sales tax exemption for membership assessments for capital improvements. The only requirement is that the assessments be "for capital improvements." There is no doubt the assessments were "for capital improvements."

As we have noted, all of the initiation deposits were segregated in a separate account and all were spent entirely for capital improvements to the golf course. We, therefore, hold that the initiation deposits received after July 1, 1985, fall within the sales tax exemption for membership assessments for capital improvements.

■ We now address the final issue of whether the additional $1.00 charges for golf cart rentals also qualify for the exemption provided in § 67–6–330(a)(14). In light of our analysis of § 67–6–330(a)(14) above, and given the fact that the parties stipulated "[t]he funds received by the taxpayer from its members from this $1.00 golf cart assessment were utilized by the taxpayer in making capital improvements to its golf cart paths," we conclude that the additional $1.00 charges received by the taxpayer after July 1, 1985, qualify as "membership assessments for capital improvements."

The Commissioner, however, contends that because the taxpayer agreed to expense, rather than capitalize, some of the $1.00 charges it previously spent for new cart paths as part of a settlement with the I.R.S. over an audit of the taxpayer's 1982 and 1983 tax returns, the taxpayer cannot now contend that all of the $1.00 charges spent during the state audit period went for capital improvements. Once again, we disagree.

■ As stated above, there is no requirement in § 67–6–330(a)(14) that a taxpayer capitalize expenditures for capital improvements on his federal tax returns in order to be entitled to claim the sales tax exemption for membership assessments for capital improvements. The fact that the taxpayer and the I.R.S. agreed, as part of a compromise audit settlement, that certain items should be expensed, rather than capitalized, does not control this litigation. Moreover, in the absence of a Closing Agreement under I.R.C. § 7121, audit settlement agreements are not binding on the I.R.S. or the taxpayer with respect to the same issue for any taxable periods other than the ones directly involved in the agreement. Accordingly, we see no reason such agreements should be binding in a Tennessee sales tax dispute involving different taxable periods such as this one.

## CONCLUSION

In summary, we hold that the "initiation deposits" received by the taxpayer after June 1, 1984, the effective date of Tenn. Code Ann. § 67–6–212(a)(1), are taxable under the Retailers' Sales Tax Act as "valuable contributions" for membership in a sports or recreation club. Accordingly, we reverse the Chancellor's finding that the "initiation deposits" are non-taxable loans. We hold, however, that the "initiation deposits" received after July 1, 1985, the effective date of Tenn.Code Ann. § 67–6–330(a)(14), are exempt from sales taxes because they were "membership assessments for capital improvements."

We also hold that the additional $1.00 charges for golf cart rentals received after July 1, 1985, are exempt from sales taxes under § 67–6–330(a)(14) as "membership assessments for capital improvements." As a result, we affirm the Chancellor's finding on this issue.

Accordingly, we reverse in part, and affirm in part, the Chancellor's judgment. The costs of this appeal are taxed to the Commissioner of Revenue, and this case is remanded to the Chancery Court for a determination of (1) the taxes and interest due upon the "initiation deposits" received by the taxpayer on and after June 1, 1984, up until July 1, 1985, and (2) the reasonable attorneys' fees and litigation expenses to which the taxpayer may be entitled under Tenn.Code Ann. § 67–1–1803 (Supp.1991).

REID, C.J., and O'BRIEN and DAUGHTREY, JJ., concur.

DROWOTA, J., not participating.