IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 4, 1999 Session

## GARY D. WILLINGHAM v. GALLATIN GROUP, INC., ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 96C-266      Tom E. Gray, Chancellor**

---

### No. M1998-00990-COA-R3-CV - Filed February 16, 2001

---

This appeal involves a dispute between a secured creditor and two local governments regarding the priority of their claims against the proceeds from the sale of the assets of a judicially dissolved corporation.   Following a bench trial, the Chancery Court for Sumner County held that the local governments' claims for delinquent business taxes had priority over the claim of the secured creditor. We have determined that the secured creditor's claim should have been given priority over the local governments' claims and, therefore, reverse the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Richard B. Gossett, Chattanooga, Tennessee, for the appellant, First Tennessee Bank.

William R. Wright and Leah May Dennen, Gallatin, Tennessee, for the appellee, Bill Kemp, County Clerk for Sumner County.

Joe H. Thompson, Gallatin, Tennessee, for the appellee, Connie Kittrell, Recorder for the City of Gallatin.

### OPINION

Gallatin Group, Inc. was a Tennessee Corporation that operated Toyota of Gallatin, an automobile dealership located in Sumner County.  Sometime in 1996, Gallatin Group's directors and stockholders deadlocked over the operation of the business.  When the impasse could not be broken, Gary Willingham, Gallatin Group's majority stockholder, filed a complaint in the Chancery Court for Sumner County seeking judicial dissolution of the corporation in accordance with Tenn. Code Ann. §§ 48-24-301, -304 (1995).  The trial court appointed a receiver, and in August 1997, the receiver sold Gallatin Group's assets for $1,195,036.

First Tennessee Bank was Gallatin Group's principal creditor. By virtue of a March 1994 security agreement, First Tennessee Bank had a perfected security interest in all of Gallatin Group's tangible and intangible assets, including its equipment, inventory, contracts, and accounts. At the time of its dissolution, Gallatin Group's secured debt to First Tennessee Bank totaled $1,753,533. First Tennessee Bank was, of course, not Gallatin Group's only creditor. Among other creditors, Sumner County had asserted a $14,062 claim for unpaid business taxes from April 1, 1995 through March 31, 1996, and the City of Gallatin had asserted a similar claim for $12,664. Like First Tennessee Bank, both Sumner County and the City of Gallatin looked to the proceeds of the sale of Gallatin Group's assets for payment.

On August 14, 1997, the trial court entered an order finding that the receiver had realized $1,195,036 from the sale of Gallatin Group's assets. It also determined that First Tennessee Bank had a secured claim[1] exceeding that amount and authorized the receiver to disburse all the proceeds of the sale to the bank, subject to payment of administrative expenses and determination of the priority between First Tennessee Bank's claims and the claims of the State of Tennessee,[2] Sumner County, and the City of Gallatin. On October 30, 1997, the trial court entered an order holding that First Tennessee Bank's claims had priority over the claims for unpaid taxes and ordering the receiver to distribute the remaining proceeds to the bank.

Sumner County and the City of Gallatin filed a "motion to reconsider"[3] the October 30, 1997 order advancing three arguments for giving their claims for unpaid taxes priority over any other creditor's claims. The trial court was evidentially impressed with these arguments because, on March 5, 1998, it entered a final order revising its October 30, 1997 order and holding that the claims of Sumner County and the City of Gallatin should be paid ahead of First Tennessee Bank's secured claim. The trial court reasoned "that said funds were held by the receiver on behalf of the City of Gallatin . . . and Sumner County . . ., and therefore, the lien of First Tennessee Bank does not attach to said funds." First Tennessee Bank has appealed from the March 5, 1998 order.

## I.
### STANDARD OF REVIEW

Our only task on this appeal is to determine whether the trial court correctly established the priority of the two local governments' claims for delinquent business taxes and First Tennessee Bank's perfected security interest. There are no factual disputes regarding this issue, and the resolution of this matter turns purely on questions of law. Accordingly, we will review the trial

---

[1] First Tennessee Bank's perfected security interest attached to the proceeds from the receiver's liquidation of Gallatin Group's assets. Tenn. Code Ann. §§ 47-9-203(3), -306(1), (2) (1996).

[2] The record indicates that the State filed claims in the receivership for unpaid franchise and excise taxes and sales taxes totaling $72,153.83.

[3] The Tennessee Rules of Civil Procedure do not expressly provide for a "motion to reconsider." Such motions filed initially after a judgment are properly considered as motions to alter or amend under Tenn. R. Civ. P. 59.04. *See Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998).

court's conclusions regarding the priority of the competing claims de novo without presuming that the trial court's decision is correct. *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998); *Coe v. City of Sevierville*, 21 S.W.3d 237, 240 (Tenn. Ct. App. 2000).

## II.
### PRIORITY OF THE LOCAL GOVERNMENTS' CLAIMS

Sumner County's and the City of Gallatin's assertion that their claims for delinquent business taxes have priority over that of First Tennessee Bank rests on three theories. First, the local governments assert that claims for delinquent business taxes should enjoy the same priority as claims for unpaid property taxes. Second, they assert that Gallatin Group had actually collected these taxes from their customers and that Gallatin Group was holding these taxes in trust for them. Third, they assert that the receiver was responsible for paying the delinquent business taxes and that the receiver should have paid these taxes as an administrative expense before paying the creditors' claims. We find each of these arguments to be without merit.

### A.
#### GENERAL PRIORITY PRINCIPLES

Priority rules exist to determine which of two or more competing parties can satisfy its claim ahead of others out of an asset or the proceeds of an asset of a debtor. 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 33-20(d), at 380 (4th ed. 1995) ("White & Summers"). These rules are never dictated by the parties to the transaction but rather by neutral principles of law that balance the policy effects of preferring one claimant or kind of claim over another. Different claims may be governed by their own peculiar set of priority rules, and the content of each set of rules may vary depending on the kind of property involved and the nature of the competing claims. While priority conflicts may present commercial law teachers with "delicious academic morsels," 4 White & Summers, § 33-1, at 311, they have generally proved to be less appetizing to the bench and the practicing bar.

The most fundamental rule of priority, applied generally throughout the law to order conflicting liens, security interests, and other claims, is that interests rank in the order they were created or perfected. This policy is reflected in the equitable maxim "first in time, first in right." Our courts have long held that creditors must run a "race of diligence," *Petway v. Hoskins*, 80 Tenn. 107, 108 (1883), and that priority disputes among creditors with equal rights will be resolved according to the "first in time" rule. *Jordan v. Everett*, 93 Tenn. 390, 396, 24 S.W. 1128, 1130 (1894). Thus, priority disputes are generally determined according to the "first in time" rule, as modified by perfection requirements, unless there is some other ground for preference. William H. Inman, *Gibson's Suits in Chancery* § 31, at 32-33 (7th ed. 1988). The General Assembly may establish other priority rules to govern specific claimants or kinds of claims. *ITT Diversified Credit Corp. v. Couch*, 669 P.2d 1355, 1362 (Colo. 1983) (involving priority rules for tax liens); *Joe Shelf Chevrolet, Inc. v. Board of County Comm'rs*, 802 P.2d 1231, 1239 (Kan. 1990).

Tennessee's version of Article 9 of the Uniform Commercial Code was first enacted in 1963[4] and is currently codified at Tenn. Code Ann. §§ 47-9-101, -607 (1996 & Supp. 2000). It contains more priority rules than any other body of law in our entire legal system and is intended to provide "a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greatest certainty." *Phifer v. Gulf Oil Corp.*, 218 Tenn. 163, 170, 401 S.W.2d 782, 785 (1966). The priority rules in Article 9, which incorporate the "first in time" rule,[5] reflect a number of important policy considerations, including promoting commercial certainty and efficiency, protecting lenders' reliance on public records of existing encumbrances, encouraging the flow of commerce, and assuring fairness in financing transactions. *Farmers & Merchants Nat'l Bank v. Schlossberg*, 507 A.2d 172, 180 (Md. 1986).

As comprehensive as Article 9 is, it does not govern all priority disputes. Its priority rules are strictly limited to consensual security interests in personal property and fixtures. Tenn. Code Ann. § 47-9-102 cmt; *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437, 442 (Tenn. Ct. App. 1994). It does not apply to most statutory liens, Tenn. Code Ann. § 47-9-102(2),[6] or to the transactions and liens listed in Tenn. Code Ann. § 47-9-104. Thus, Article 9's priority rules are not applicable to conflicts between security interests and state tax liens or other non-possessory statutory liens. *ITT Diversified Credit Corp. v. Couch*, 669 P.2d at 1364; *Church Bros. Body Serv., Inc. v. Merchants Nat'l Bank & Trust Co.*, 559 N.E.2d 328, 330-31 (Ind. Ct. App. 1990); *Security Benefit Life Ins. Corp. v. Fleming Cos.*, 908 P.2d 1315, 1321 (Kan. Ct. App. 1995); 9 Ronald A. Anderson & Larry Lawrence, *Anderson on the Uniform Commercial Code* § 9-301:17, at 63 (3d ed. 1999); 4 White & Summers, § 30-2, at 4.

In circumstances not covered by the Uniform Commercial Code, Tenn. Code Ann. § 47-1-103 contemplates consulting principles of law outside Article 9. *See First State Bank v. DeKalb Bank*, 530 N.E.2d 544, 548 (Ill. App. Ct. 1988). When Article 9 does not supply the priority rules directly, the courts frequently seek guidance from common-law doctrines such as the "first in time" rule. *First State Bank v. DeKalb Bank*, 530 N.E.2d at 548; *Kuemmerle v. United New Mexico Bank at Roswell, N.A.*, 831 P.2d 976, 978 (N.M. 1992); *Paris American Corp. v. McCausland*, 759 P.2d 1210, 1213 (Wash. Ct. App. 1988). The courts will also consult the priority rules in Article 9 for guidance. *Commerce Union Bank v. Possum Holler, Inc.*, 620 S.W.2d 487, 490-91 (Tenn. 1981); *see also Whayne Supply Co. v. Commonwealth of Ky. Revenue Cabinet*, 925 S.W.2d 185, 188 (Ky 1996); *Circle 76 Fertilizer, Inc. v. Nelsen*, 365 N.W.2d 460, 466 (Neb. 1985); *In re N-REN Corp.*, 773 P.2d 1269, 1271 (Okla. 1989); *Johnston v. Simpson*, 621 P.2d 688, 690-91 (Utah 1980).

---

[4] Act of Mar. 8, 1963, ch. 81, 1963 Tenn. Pub. Acts 243. The General Assembly has replaced this article with a new Article 9 based on revisions approved in 1998 by the National Conference on Uniform State Laws and the American Law Institute. Act of May 17, 2000, ch. 846, 2000 Tenn. Pub. Acts 2402. These revisions do not take effect until July 1, 2001. Accordingly, we will rely on the relevant portions of Tennessee's version of Article 9 that were in effect when the transactions involved in this case occurred.

[5] *See, e.g.*, Tenn. Code Ann. §§ 47-9-301(1)(b), -312(5)(a).

[6] This case does not implicate the liens covered by Tenn. Code Ann. § 47-9-310.

Ordinarily, the relative priority of a security interest and a statutory lien is determined by the order in which the statutory lien vested or the security interest was perfected. *First Nat'l Bank v. Strong*, 663 N.E.2d 432, 434 (Ill. App. Ct. 1996); *Whayne Supply Co. v. Commonwealth of Ky. Revenue Cabinet*, 925 S.W.2d at 188; *Marine Midland Bank-Central v. Gleason*, 405 N.Y.S.2d 334, 337 (App. Div. 1978). Thus, in the absence of a statute or a common-law exception, a secured creditor with a perfected security interest has priority over a subsequent lien creditor, and a lien creditor has priority over an unperfected secured creditor. Tenn. Code Ann. § 47-9-301(1)(b); *W.S. Badcock Corp. v. Myers*, 696 So. 2d 776, 782 (Fla. Dist. Ct. App. 1996); *Bank of Hawaii v. DeYoung*, 992 P.2d 42, 48 (Haw. 2000); *Shaw Mudge & Co. v. Sher-Mart Mfg. Co.*, 334 A.2d 357, 359-60 (N.J. Super. Ct. App. Div. 1975). Likewise, an unperfected secured creditor has priority over an unsecured creditor without a lien because an unsecured creditor has no claim on any specific collateral. 4 White & Summers, § 33-2, at 312-314.

## B.
### CLASSIFICATION OF THE PARTIES AND THEIR CLAIMS

The first step in resolving a priority dispute is to identify and classify the competing claimants and the nature of their claims. When one of the claimants is a secured creditor, Article 9 provides a helpful framework for this analysis. The three claimants whose claims are at issue in this case are First Tennessee Bank, Sumner County, and the City of Gallatin.

First Tennessee Bank is a secured creditor of Gallatin Group whose security interest was perfected in 1994 by virtue of the filing of a security agreement covering all of Gallatin Group's tangible and intangible assets. Sumner County and the City of Gallatin are creditors of Gallatin Group because Gallatin Group owed each of them business taxes for the period from April 1, 1995 through March 31, 1996. Neither the county nor the city are secured creditors. It remains to be decided whether they are lien creditors, and if so when their liens attached.

Sumner County had issued a delinquent tax notice to Gallatin Group on September 10, 1996.[7] The county issued a distress warrant[8] on September 24, 1996, but the sheriff was unable to attach any of Gallatin Group's personal property because of the intervening corporate dissolution. The Business Tax Act does not automatically impress a lien on a taxpayer's property when a local government issues a delinquent tax notice or a distress warrant. Accordingly, to turn its delinquent tax claim against the taxpayer into a lien on the taxpayer's property, a local government must file

---

[7]Tenn. Code Ann. § 67-4-719(b)(2) (1998).

[8]Tenn. Code Ann. § 67-4-215(1998). The use of distress warrants to collect taxes is a statutory remedy of ancient vintage. *Scottish Union & Nat'l Ins. Co. v. Bowland*, 196 U.S. 611, 632, 25 S. Ct. 345, 352 (1905); Clayton Williams & Martin P. Burks, III, *Burks Pleading & Practice at Common Law* §§ 369, 371 (3d ed. 1934). A distress warrant is a summary process in the nature of an execution against the debtor's goods to raise the amount of money owed to the party having the warrant issued. It is issued without the necessity of a judgment or any other judicial investigation into the debtor's liability for the amount claimed. An entity obtaining a distress warrant need not first have lien against the seized goods. *Edmonson v. Walker*, 137 Tenn. 569, 588, 195 S.W. 168, 172 (1917); *see also Universal C.I.T. Credit Corp. v. Borough of Paramus*, 217 A.2d 905, 907 (N.J. Super. Ct. Law Div. 1966); 6 John D. Lawson, *Rights, Remedies, and Practice* §§ 2819-20 (1890).

suit, obtain a judgment, and then levy on the property in accordance with Tenn. Code Ann. § 25-5-103 (1980).[9] As far as this record shows, Sumner County never instituted legal proceedings against Gallatin Group. Accordingly, Sumner County never had a lien on any of Gallatin Group's property, and for the purposes of this proceeding, it must be considered to be an unsecured creditor without a statutory lien.

The City of Gallatin is in the same posture as Sumner County. It served a delinquent tax notice on Gallatin Group on September 30, 1996. Gallatin Group filed a city business tax return in November 1996 but did not pay the taxes owed. The city did not issue a distress warrant and did not file suit to collect the delinquent taxes; however, it filed a claim with Gallatin Group's receiver in July 1997. In this posture, the City of Gallatin is nothing more than an unsecured creditor without a statutory lien.

## C.
### THE LOCAL GOVERNMENTS' ENTITLEMENT TO CLAIM THE STATUTORY PRIORITY FOR PROPERTY TAXES

Both Sumner County and the City of Gallatin realize that there is no contest between the priority of the claim of a secured party with a perfected security interest and the claim of an unsecured party without a lien. Accordingly, they argue that we should equate business taxes with property taxes in order to enable them to claim the priority for property taxes in Tenn. Code Ann. § 67-5-2101(a) (1998). We are unpersuaded by their argument.

Aside from the tax on income generated by stocks and bonds, all taxes imposed in Tennessee are either ad valorem or privilege taxes. *Tennessee Trailways, Inc. v. Butler*, 213 Tenn. 136, 142-43, 373 S.W.2d 201, 203 (1963); Lee S. Greene, et al., *Government in Tennessee* 176 (4th ed. 1982). Other litigants have tried unsuccessfully to blur the line between these two classifications. *See Covenant Cmty. Church v. Lowe*, 698 S.W.2d 339, 342 (Tenn. 1985); *Commerce Union Bank v. State Bd. of Equal.*, 615 S.W.2d 151, 152 (Tenn. 1981). In this case, Sumner County and the City of Gallatin seek to blur the line between the two types of taxes. Their efforts must fail.

Local business taxes are privilege taxes, not property taxes. Tenn. Code Ann. §§ 67-4-701(a), -704(a), -705 (1998); *Town of Algood v. Mid-South Pavers, Inc.*, 569 S.W.2d 848, 850 (Tenn. Ct. App. 1978). It matters not that business taxes are, to some extent, imposed in lieu of personal property taxes. The fact that businesses may deduct paid personal property taxes from what they would otherwise owe in business taxes, Tenn. Code Ann. § 67-4-713(3) (1998), does not legally confer on business taxes all the accouterments of property taxes. *Dixie Rents, Inc. v. City of Memphis*, 594 S.W.2d 397, 400 (Tenn. Ct. App. 1979) (holding that the General Assembly may levy business taxes on merchants in lieu of ad valorem taxes); *Commerce Union Bank of Chattanooga v. State Bd. of Equal.*, 615 S.W.2d at 152 (holding that an excise tax levied in lieu of personal property taxes remains a privilege tax). Accordingly neither Sumner County nor the City of Gallatin

---

[9] The local government could also obtain a writ of execution in accordance with Tenn. Code Ann. § 26-1-103 (1980) to collect a judgment for delinquent business taxes.

enjoy the property tax first priority lien in Tenn. Code Ann. § 67-5-2101(a) to secure payment of business taxes. Any lien for business taxes must come from the Business Tax Act.

The Business Tax Act establishes its own tax system that is not governed by the state's general revenue statutes, except where the Act expressly incorporates these statutes. Tenn. Code Ann. §§ 67-4-201(b), -701 (1998); *see*, *e.g.*, *Heath v. Creson*, 949 S.W.2d 690, 692 (Tenn. Ct. App. 1997) (noting the difference between State and local taxes). Under the Business Tax Act, the collection of business taxes follows a carefully laid out procedure. For the first six months of delinquency, local collecting officials are authorized to attempt collection of business taxes through the exclusive means of a distress warrant. Tenn. Code Ann. § 67-4-719(c). After six months of delinquency, the local collecting authority loses its power to collect the unpaid business taxes, and this power devolves on the Commissioner of Revenue under Tenn. Code Ann. § 67-4-719(d). There is no evidence that the Commissioner issued a lien for the delinquent business taxes in this case, and even if the Commissioner had, it would have been subordinate to the bank's existing perfected security interest. Tenn. Code Ann. § 67-1-1403(c)(3) (1998).

Gallatin Group's delinquent business taxes cannot be considered property taxes. Accordingly, neither Sumner County nor the City of Gallatin are entitled to the priority afforded property taxes by Tenn. Code Ann. § 67-5-2101(a), and the delinquent business taxes were nothing more than unsecured debt.

**D.**
**BUSINESS TAXES AS "TRUST FUND" TAXES**

Both Sumner County and the City of Gallatin argue in the alternative that business taxes are "trust fund" taxes that Gallatin Group's receiver was holding in trust for them. They assert that Gallatin Group and its receiver were actually acting as their agents to collect these taxes from the automobile dealership's customers and, therefore, that these collections in the hands of Gallatin Group and the receiver were actually property of the city and the county. We have determined that the local governments cannot characterize their business tax as a "trust fund" tax.

"Trust fund" taxes are taxes imposed on a party but collected and temporarily held in trust by an intermediary before they are ultimately remitted to the taxing authority. *In re Markos Gurnee P'ship*, 163 B.R. 124, 130 (Bankr. N.D. Ill. 1993); *In re King*, 117 B.R. 339, 341 (Bankr. W.D. Tenn. 1990). These taxes are not the intermediary's property, but rather they belong to the taxing authority even while they are in the intermediary's hands. Accordingly, "trust fund" taxes in the hands of an intermediary cannot be reached by the intermediary's creditors. The most common examples of "trust fund" taxes are state sales taxes, *In re King*, 117 B.R. at 341; *Sam Carey Lumber Co. v. Sixty-One Cabinet Shop, Inc.*, 773 S.W.2d 252, 255 (Tenn. Ct. App. 1989), and federal withholding taxes.

Local business taxes are imposed on businesses for each location where they routinely engage in activity "with the object of gain, benefit, or advantage, either direct or indirect," encompassing the sale, fabrication, furnishing, repairing, or servicing for consideration any tangible personal

property. Tenn. Code Ann. §§ 67-4-702(a)(1), (12), - 704, -709. Under the Business Tax Act, what is commonly referred to as the "incidence of the tax" falls not on the customer but on the business itself. Tenn. Code Ann. §§ 67-4-706(a) -708; *Hermitage Mem'l Gardens Mausoleum & Mem'l Chapel, Inc. v. Dunn*, 541 S.W.2d 147, 149 (Tenn. 1976). Gallatin Group did not serve as the intermediary to collect the business taxes owed by some other taxpayer. Indeed, any attempt to shift the tax to its customers by adding the tax to the sales price of the automobiles would have resulted in increasing its sales figures for business taxation purposes. Tenn. Comp. R. & Regs. r. 1320-4-5-.03 (2000).

The Business Tax Act places the incidence of the tax directly on businesses, and the Department of Revenue's regulations make sure it stays there. Businesses do not collect these taxes from others. They are the taxpayers. Accordingly, we decline to accept Sumner County's and the City of Gallatin's invitation to treat local business taxes as "trust fund" taxes.

**E.**
**THE RECEIVER'S DIRECT LIABILITY FOR BUSINESS TAXES**

The last argument made by Sumner County and the City of Gallatin is that Tenn. Code Ann. § 67-4-208[10] requires Gallatin Group's receiver to pay the delinquent business taxes. As we pointed out during oral argument, this assertion appears to confuse liability for payment with priority of payment. We do not construe Tenn. Code Ann. § 67-4-208 to create a priority with regard to the payment of delinquent business taxes.

As we consider Tenn. Code Ann. § 67-4-208 in the context of Sumner County's and the City of Gallatin's argument, we must keep in mind that our role is to ascertain and to give effect to the General Assembly's intent without unduly restricting or extending a revenue statute beyond its intended scope. *Tibbals Flooring Co. v. Huddleston*, 891 S.W.2d 196, 198 (Tenn. 1994); *Covington Pike Toyota, Inc. v. Cardwell*, 829 S.W.2d 132, 135 (Tenn. 1992). Legislative intent is reflected in the language of the statute read in the context of the entire statutory scheme. *National Gas Distribs., Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). We must accord this language its natural and ordinary meaning. *Nashville Golf & Athletic Club v. Huddleston*, 837 S.W.2d 49, 53 (Tenn. 1992); *American Tel. & Tel. Co. v. Huddleston*, 880 S.W.2d 682, 687 (Tenn. Ct. App. 1994). If the legislative intent is clearly reflected in the language of the statute, we are not at liberty to depart from the statute's plain meaning. *Carson Creek Vacation Resorts, Inc. v. State*, 865 S.W.2d 1, 2 (Tenn. 1993).

---

[10]Tenn. Code Ann. § 67-4-208 provides:

(a)     Any successor by purchase, or otherwise, of any business subject to tax shall be liable for and shall pay the tax imposed against such business before such receiver can obtain a license to do any of the acts herein declared to be taxable.

(b)     Any person acting as agent, trustee, guardian, administrator, executor, assignee or receiver doing any of the acts herein declared to be a privilege is subject to the tax imposed on that privilege.

Tenn. Code Ann. § 67-4-208 obligates receivers to pay business taxes in two ways. First, if a receiver desires to continue operating a business subject to the business tax, Tenn. Code Ann. § 67-4-208(a) requires the receiver to pay the accrued business taxes as a condition for obtaining a local business license. Second, Tenn. Code Ann. § 67-4-208(b) requires receivers who have taken over a business for the purpose of liquidating it to pay the business taxes that had accrued while the business was operating. Thus, with respect to business taxes, Tenn. Code Ann. § 67-4-208 codifies the general rule that, upon appointment, a receiver steps into and stands in the shoes of the dissolving corporation with exactly the same rights and obligations that the corporation had. *Pope v. Knoxville Indus. Bank, Inc.*, 173 Tenn. 461, 465, 121 S.W.2d 530, 531 (1938); *Butcher v. Howard*, 715 S.W.2d 601, 603 (Tenn. Ct. App. 1986).

We must not, however, read more into Tenn. Code Ann. § 67-4-208 than its words mean. The phrase "shall pay the tax imposed against such business" in Tenn. Code Ann. § 67-4-208(a) connotes an obligation to pay, nothing more. It has similar import to stock language found in most wills stating that the deceased's personal representative "shall pay" all the deceased's lawful debts.[11] While this language obligates the personal representative to pay the deceased's lawful debts to the extent that there are funds in the estate, it does not obligate the personal representative to personally pay the debts if the estate cannot, and it does not provide direction to the personal representative regarding how to pay the deceased's debts if the amount of the debts exceed the funds in the estate.

As we construe Tenn. Code Ann. § 67-4-208, it gives Sumner County and the City of Gallatin enforceable rights to the payment of lawfully-assessed business taxes. Accordingly, they may look to the receiver for the payment of these taxes – right up to the full limit of the receiver's ability to pay them. However, where the receiver's legal liability to pay the taxes collides head-on with its financial ability to pay the taxes, Tenn. Code Ann. § 67-4-208 does not create a priority requiring the receiver to pay the delinquent business taxes before addressing the claims of the other creditors. Thus, we do not construe Tenn. Code Ann. § 67-4-208 to require the payment of delinquent business taxes for which no lien has been obtained ahead of a secured creditor with a perfected security interest.

**III.**

The statutes governing the judicial dissolution of corporations do not contain priority rules to instruct a receiver's disposition of proceeds of the sale of corporate assets. Without specific statutory guidance, the receiver could appropriately formulate a plan to distribute the proceeds that reflect Article 9's priority rules. Accordingly, Gallatin Group's receiver could decide to pay the claim of First Tennessee Bank, a secured creditor with a perfected security interest, ahead of the delinquent business tax claims of Sumner County and the City of Gallatin. Therefore, we hold that the trial court erred by directing the receiver to pay the delinquent business tax claims ahead of First Tennessee Bank's claim.

---

[11] *See*, *e.g.*, 3 Jack W. Robinson, Sr. & Jeff Mobley, *Pritchard on Wills & Administration of Estates* § 992, at 11 (5th ed. 1994).

-9-

We reverse the March 5, 1998 order and affirm the October 30, 1997 order holding that First Tennessee Bank's claim had priority over the business tax claims of Sumner County and the City of Gallatin. We remand the case to the trial court for whatever further proceedings may be required, and we tax the costs of this appeal, jointly and severally, to Sumner County and the City of Gallatin.

_____
WILLIAM C. KOCH, JR., JUDGE