**In re Vera PINKSTON, Debtor.**

**Vera PINKSTON, Plaintiff,**

v.

**SECURITY FINANCE CORPORATION OF GEORGIA, d/b/a Security Finance Corp., Defendant.**

**Bankruptcy No. 94–11082.**

**Adv. No. 94–01046A.**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

May 31, 1995.

Angela Carter McElroy, Augusta, GA, for plaintiff.

Ted H. Clarkson, Kilpatrick and Cody, Augusta, GA, Marshall T. Walsh, Gaines, Walsh & Chapin, Spartanburg, SC, for defendant.

### ORDER

JOHN S. DALIS, Bankruptcy Judge.

This adversary proceeding was filed by Vera Pinkston, debtor in the underlying Chapter 13 case, alleging violation by Security Finance Corporation of Georgia, d/b/a Se-

curity Finance Corp. ("Security Finance"), the holder of a claim in debtor's bankruptcy case, of both the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. and implementing regulation, Regulation Z, 12 C.F.R. § 226 et seq., and the Georgia Industrial Loan Act, ("GILA") O.C.G.A. § 7–3–1 et seq. On consent of both parties, the matter was submitted for adjudication without trial on both parties' pleadings, completed discovery (including defendant's response to plaintiff's request for production of documents and request for admission, defendant's answers to plaintiff's first interrogatories), depositions of Donald S. Cathcart and Charles Dean Turner, and each party's brief in support of their respective positions. After considering the evidence presented to me, I find that there has not been a violation of the Federal Truth in Lending Act or the Georgia Industrial Loan Act.

This dispute arises out of a promissory note and security agreement executed by the parties and evidencing Ms. Pinkston's obligation to Security Finance. Under this note and security agreement, Ms. Pinkston refinanced an amount outstanding and borrowed additional money while granting Security Finance a security interest in certain listed household goods. Pursuant to the note and security agreement, a $10.00 charge was imposed in the itemization of the amount financed as a charge "To non-recording ins. co.," meaning there is a $10.00 premium charged by Security Finance allegedly for nonfiling insurance, also known as nonrecording insurance, to insure Security Finance against losses resulting from not filing a UCC–1 financing instrument perfecting its security interest.

Plaintiff complains that this charge is mischaracterized and should be disclosed as part of the finance charge under TILA. The failure to so disclose, plaintiff maintains, yields the stated finance charge and its expression as an annual percentage rate (disclosed as required by TILA) under-reported in derogation of the TILA. Plaintiff further

maintains that the $10.00 charge imposed is not a premium for lawful insurance and consequently violates the GILA, specifically O.C.G.A. § 7–3–15, *infra.*

As noted by the Honorable B. Avant Edenfield, Chief United States District Court Judge for this district in *Dixon v. S & S Loan Service of Waycross, Inc.,*

> Congress's purpose in passing TILA was "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." TILA is a remedial statute, and, hence, is liberally construed in favor of borrowers. The remedial objectives of TILA are achieved by imposing "a system of strict liability in favor of consumers when mandated disclosures have not been made." Thus, "liability will flow from even minute deviations from the requirements of the statute."

754 F.Supp. 1567, 1570 (S.D.Ga.1990) (internal citations omitted). To help assure meaningful disclosure of credit terms, 15 U.S.C. § 1638(a) requires disclosure of, inter alia, the finance charge [1], the finance charge expressed as an annual percentage rate, and the amount financed, defined under subsection (2)(A)(ii) to include any charges "not part of the finance charge or of the principal amount of the loan." Certain charges are excluded from the definition of finance charge under 16 U.S.C. § 1605; nonfiling insurance premiums enjoy such an exclusion under subparagraph (d)(2), *infra.* Applying these TILA definitions, charges excluded from the finance charge will be disclosed as part of the amount financed. What is disputed in this case is how the $10.00 charge imposed under the contract in question should have been disclosed: plaintiff argues that it was collected to create a "reserve pool" or self-insurance against default and does not qualify as nonfiling insurance, exempt from disclosure as part of the finance charge under 15 U.S.C. § 1605(d)(2) and 12 C.F.R. § 226.4(e)(2). The issue is the actual function of the $10.00 charge.

---

1. "Finance charge" is defined as,
   the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.
   15 U.S.C. § 1605(a).

Georgia law permits a lender to charge a borrower $10.00 for premiums for insurance purchased in lieu of filing a UCC–1 financing statement. This figure is derived from the cost of filing the financing statement, currently $10.00. *See* O.C.G.A. § 15–6–77(f)(1)(B). O.C.G.A. § 7–3–15 [2] authorizes the imposition of the fee for filing a financing statement OR the premium for insurance purchased in lieu of filing so long as such premium does not exceed the cost for filing. TILA also permits the imposition of a charge for nonfiling insurance so long as such charge does not exceed the fee for filing a security instrument in lieu of which the insurance is purchased:

> If any of the following items is itemized and disclosed in accordance with the regulations of the Board in connection with any transaction, then the creditor need not include that item in the computation of the finance charge with respect to that transaction:
>
> (1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.
>
> (2) **The premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction, if the premium does not exceed the fees and charges described in paragraph (1) which would otherwise be payable.**

15 U.S.C. § 1605(d)(2) (emphasis added). *Accord* 12 C.F.R. § 226.4(e)(2). But,

> "[i]f the creditor collects and simply retains a fee as sort of "self-insurance" against nonfiling it may not be excluded from the finance charge." In other words, the exclusion is only available if the nonfiling insurance is actually purchased.

*Dixon, supra,* at 1572 (citing Regulation Z, Official Staff Interpretation, 12 C.F.R. Part 226, Supp. 1 at 286). Under this binding authority, if the nonfiling insurance is not actually purchased, the fee collected for such must be disclosed as part of the finance charge. *Id.*

In denying the insurer's motion for summary judgment in *Dixon,* Chief Judge Edenfield noted that there existed a factual question as to whether the nonfiling insurance premiums were validly charged or were collected merely as a bad debt reserve due to the presence of certain factors: the cap on liability of 89% of the premiums remitted, the testimony of the lender that the premiums were actually used as a reserve for bad debts of all types, and the fact that the insurer never evaluated, let alone rejected, any claim made under the agreement. Plaintiff points to these factors to support a finding of fact here. In *Dixon* Chief Judge Edenfield used those factors only preliminarily, to determine whether a factual dispute existed with regard to the validity of the premium charged. In this case I am called upon to make the factual determination only alluded to in *Dixon.* I find that a nonfiling insurance premium was validly charged.

■ The plaintiff has failed to demonstrate that the charge is imposed to create a reserve for bad debts; in fact, the evidence supports the validity of the nonfiling policy between Security Finance and Spartan Property Insurance Company ("Spartan"). The deposition testimony reveals that the premiums are remitted from Security Finance to Spartan, a separate entity. Plaintiff has established that Charles Turner is the president of both Spartan and Security Finance, but this fact does not indicate that the remitted premiums actually fund any sort of bad debt reserve. Plaintiff points out that Spartan imposes a ceiling on its liability under the policy of 92% of the premiums remitted. This liability cap does not by itself indicate that the premiums are used to create a reserve for bad debts, especially considering

---

**2.** O.C.G.A. § 7–3–15 in relevant part:

No licensee shall charge, contract for, or receive any other or further amount in connection with any loans authorized by this chapter ... except the actual lawful fees paid to a public official or agency of the state for filing, recording, or, on loans over $100.00, the amount of the lawful premiums, no greater than such fees, actually paid for insurance against the risk of nonrecording or releasing any instrument securing the loan; ....

O.C.G.A. § 7–3–15.

the unrebutted deposition testimony that the 92% cap has never been reached and that the difference between the claims paid and the 92% ceiling is not remitted to Security Finance either directly or indirectly. Further, the unrebutted deposition testimony indicates that liability caps are standard in the insurance industry.

The testimony also indicates that Spartan evaluates and has declined claims made by Security Finance under the nonfiling insurance policy. The evidence which has been presented via discovery and depositions establishes that the $10.00 premium charged here was collected by Security Finance to pay for a valid insurance policy and not merely to fund a bad debt reserve.

■ Plaintiff argues that even if nonfiling insurance was actually purchased such insurance covers more losses than those resulting strictly from non-filing of a financing statement and consequently the $10.00 charge qualifies as a "premium or other charge protecting the creditor against the consumer's default or other credit loss" which must be disclosed as part of the finance charge under TILA and Regulation Z. *See* 15 U.S.C. § 1605(a)(5); 12 C.F.R. § 226.4(a)(5). Plaintiff relies for this contention on the language of *Dixon* and *American Aviation v. Georgia Telco Credit Union*, 223 F.2d 206, 207 (5th Cir.1955), which describes nonfiling or nonrecording insurance as insurance designed to compensate the lender for losses resulting "solely from its failure to file" a security instrument for public record. *Dixon, supra*, at 1572. Security Finance maintains that the broader coverage comes at no cost to the borrower and does not change the primary nature and purpose of the coverage as nonfiling insurance. The dispute here goes to the effect of such increased coverage, which is an issue of first impression.

Plaintiff has adequately demonstrated that under the terms of Security Finance's nonfiling insurance policy with Spartan, losses other than those traceable directly to nonfiling of a UCC–1 instrument are covered. For example, where a borrower files for bankruptcy, the account is simply deemed a loss due to the creditor's inability to "attach the secured collateral." Additionally, the deposition testimony shows that a memorandum was circulated among the Security Finance offices providing the procedure for submitting claims under the nonfiling policy and the instances when such claims are proper due to the creditor's inability to attach the collateral: existence of a superior lien, collateral disposed of, repossession of collateral by another creditor, borrower has filed bankruptcy, court-ordered attachment for collateral has been granted, borrower refuses to voluntarily surrender the mortgaged items. Plaintiff argues that these losses are not traceable to nonfiling, and that certain of the losses may not ever be prevented by filing a financing statement.

Rather than dispute that coverage exists in these circumstances, Security Finance admits that the master nonfiling insurance policy between Security Finance and Spartan provides broader coverage than simply for losses resulting strictly from nonfiling of financing statements. Security Finance argues that this extra coverage comes at no cost to (and consequently does not damage) the borrower. The master policy between Spartan and Security Finance declares the premium for the coverage to be $10.00 per secured instrument involving household goods or personal property. Security Finance relies on the state and federal authorization of a $10.00 nonfiling insurance premium for nonfiling coverage, *supra*, arguing that imposition of insurance which provides more coverage for the same premium is not only not forbidden, it is anticipated.[3] I agree that the added cover-

3. Security Finance refers to the recent amendment to O.C.G.A. § 33–7–3 (concerning credit insurance) which defines non-filing insurance:

(12) Nonrecording insurance or nonfiling insurance, which is insurance utilized in connection with credit transactions in lieu of the actual recording, filing, or releasing of a security instrument or financing statement. The premium charge for this insurance may not

exceed the actual official fees which would be payable to file, record, or release a security instrument or financing statement. **This insurance provides coverage for any loss or potential loss caused by any means whereby the creditor is prevented from obtaining possession of the covered property, enforcing its rights under a security agreement, or of obtaining the proceeds to which it is entitled**

age does not destroy the nature of the policy as nonfiling or nonrecording insurance. The policy simply augments the coverage for the same price, a benefit to the lender-insured which comes at no cost to the borrower. Plaintiff has failed to demonstrate that the extended coverage was not lawfully charged. The premium was properly disclosed.

**under the security agreement.** Nothing shall prohibit nonrecording insurance or nonfiling insurance from being incorporated, by endorsement or rider, into a vendor's single interest policy or a similar type of policy; ... 1995 Georgia Law Act 299 (House Bill 330), GA LEGIS 299 (1995) (emphasis added).

Judgment is ORDERED entered for the defendant.

This amendment was not in effect at the time of the execution of the note and security agreement in this case and so is of no effect, *see* O.C.G.A. § 1–3–5 and is not considered by me in this case.