696 So.2d 776 (1996)
W.S. BADCOCK CORPORATION, a Florida Corporation, Appellant,
v.
Sherry A. MYERS and Betty Jones, individually and on behalf of a class of all others similarly situated, Appellees.
Nos. 95-4648, 95-2592.
District Court of Appeal of Florida, First District.
December 17, 1996.
Rehearing Denied April 3, 1997.
*777 Marie Tomassi and John E. Johnson of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, for Appellant.
James B. Fensom and Benjamin W. Redding of Barron, Redding, Hughes, Fite, Bassett & Fensom, P.A.; Edward M. Price, Jr. of Farmer, Price, Hornsby & Weatherford, Dothan, AL, for Appellees.
John A. Rogers, Jr., Tallahassee, for Amicus Curiae Florida Retail Federation.
JOANOS, Judge.
W.S. Badcock Corporation (Badcock) appeals two trial court rulings in a lawsuit initiated by appellees, plaintiffs in the lower tribunal. In Case No. 95-2592, Badcock challenged a nonfinal order certifying the action as a class action under Rule 1.220(b)(2) of the Florida Rules of Civil Procedure. The questions raised in Case No. 95-2592 are (1) whether the claims asserted by plaintiffs are maintainable as a class action under the Florida Deceptive and Unfair Trade Practices Act[1] (DUTPA); and (2) whether the named *778 plaintiffs satisfy the requirements for class representatives under rule 1.220.
During pendency of the appeal in Case No. 95-2592, the trial court issued an order granting plaintiffs' motion for partial summary judgment on liability. The appeal of that order is before us in Case No. 95-4648. Badcock contests both the grant of summary judgment on liability, and the related determination that Badcock had been guilty of deceptive and unfair trade practices as a matter of law. In Case No. 95-4648, the questions raised are (1) whether the claims presented by plaintiffs are exempt from the operation of the deceptive and unfair trade practices act; (2) whether the "non-filing fee" Badcock charged its credit customers violated the federal Truth in Lending Act;[2] and (3) whether there are disputed issues of material fact which make the grant of summary judgment improper.
We granted the parties' motion to consolidate these cases for purposes of oral argument. Since both appeals concern pre-trial rulings involving the same underlying complaint, we consider it appropriate to issue a single opinion addressing the issues raised in the separate appeals.

CLASS CERTIFICATIONCASE NO. 95-2592
In their second amended complaint, plaintiffs/appellees alleged they were charged a seven dollar non-filing fee in connection with purchases of consumer goods sold and financed by Badcock. The complaint further alleged that Badcock entered into a collusive agreement with American Bankers Insurance Company, whereby American Bankers would retain ten percent of all premiums paid for a policy of non-filing insurance, and remit the remaining ninety percent to Badcock as recoupment of bad debt losses. Paragraph 12 of the complaint alleged that since a purchase money security interest in consumer goods is perfected automatically without filing, the insurance "cannot be `in lieu of perfecting' that security interest." Thus, Badcock is not allowed to charge a fee for insurance instead of filing, as it represented to its customers.
The class action representations of the complaint stated in part:
20. The class that Plaintiffs represent is composed of all of those customers of Defendant who are residents or domiciliaries of the state of Florida who financed the purchase of consumer goods with Defendant and were charged a non-filing fee.
21. There is a well-defined community of interest in the questions of law and fact involved affecting the parties in the class in that since July 1990 through the time of the filing of this complaint Plaintiffs and class members were charged unlawful fees for the alleged purpose of purchasing non-filing insurance as set forth above. Plaintiffs and class members were injured. Thus, the issues of law and the issues of fact are identical with respect to all members of the class.
22. The claims of the Plaintiffs are typical of those of the class in that the Plaintiffs and the class members were all injured by the unlawful charges and the misleading representations concerning the fees charged to purchase non-filing insurance.
The complaint further alleged that proof of a single state of facts will establish the right of each member of the class to recover; the class includes thousands of members, all of whom are readily identifiable from Badcock's corporate records; plaintiffs suffered loss identical to that of all other class members, and will fairly and adequately represent the class; and a class action is superior to other available methods for fair and efficient adjudication of the litigation.
Appellees/plaintiffs filed a motion to determine class representation, together with a supporting memorandum of law. Badcock filed a memorandum in opposition to the class certification, asserting that the claims raised were not maintainable as a class action and the named plaintiffs were not adequate class representatives. Badcock further argued that any issue with respect to the non-filing insurance was subject to the regulatory supervision of the Department of Insurance *779 and the Department of Banking and Finance. The trial court issued the order here under review, determining that a class exists under rule 1.220(b)(2), and that the named plaintiffs could adequately represent the class.
This court has jurisdiction to review the trial court's nonfinal order certifying a class. Art. V, § 4(b)(1), Fla. Const.; Fla. R.App.P. 9.130(a)(3)(C)(vii). The order certifying a class action is subject to an abuse of discretion standard of review. See Cordell v. World Insurance Co., 418 So.2d 1162, 1164 (Fla. 1st DCA 1982), review denied, 429 So.2d 5 (Fla.1983).
Badcock's argument that the DUTPA claims raised by plaintiffs are not maintainable as a class action is based on the following assertions: (1) the conduct at issue involves insurance; (2) the DUTPA does not apply to activity regulated by the Department of Insurance, see § 501.212(4), Fla.Stat.; and (3) the TILA does not prohibit the holder of an automatically perfected purchase money security interest from charging a fee for non-filing insurance, therefore, Badcock did not violate the TILA by charging a non-filing fee in lieu of filing a financing statement.
An analysis of the arrangement between Badcock and American Bankers in accordance with the factors enumerated in Professional Lens Plan, Inc. v. Department of Insurance, 387 So.2d 548 (Fla. 1st DCA 1980), suggests the agreement does not meet the test for insurance. If insurance, the agreement was one of default or credit insurance, and as such, Badcock was required to include the fee in the finance charge. Under the TILA, the amount of the finance charge is "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." Among other things, a charge for a "premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss" must be included in the finance charge. 15 U.S.C. § 1605(a)(5).
Badcock also challenges the class determination in this case, asserting that class certification is prohibited with respect to common law allegations of fraud. See Lance v. Wade, 457 So.2d 1008, 1011 (Fla. 1984). A finding of fraud is not necessary to sustain a violation under the DUTPA. Urling v. Helms Exterminators, Inc., 468 So.2d 451, 453 (Fla. 1st DCA 1985); Rollins, Inc. v. Heller, 454 So.2d 580, 584 (Fla. 3d DCA 1984), review denied, 461 So.2d 114 (Fla. 1985). Violations of the TILA are determined on an objective standard, based on the representations in the relevant disclosure documents, with no necessity to establish the subjective misunderstanding or reliance of particular customers. Rodash v. AIB Mortgage Co., 16 F.3d 1142, 1144-1145 (11th Cir. 1994), abrogated on other grounds by Veale v. Citibank, F.S.B., 85 F.3d 577 (11th Cir. 1996); Zamarippa v. Cy's Car Sales, 674 F.2d 877, 879 (11th Cir.1982).
The basic prerequisites for class certification are set forth in Rule 1.220(a), of the Florida Rules of Civil Procedure. The rule provides in part:
(a) Prerequisites to Class Representation. Before any claim or defense may be maintained on behalf of a class by one party or more suing or being sued as the representative of all the members of a class, the court shall first conclude that (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.
The class in this case was certified under Rule 1.220(b)(2), which states:
(b) Claims and Defenses Maintainable. A claim or defense may be maintained on behalf of a class if the court concludes that the prerequisites of subdivision (a) are satisfied, and that:
....
(2) the party opposing the class has acted or refused to act on grounds generally *780 applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate; ...
Badcock does not challenge the trial court's finding that the members of the class are so numerous as to make joinder of all members impracticable. Indeed, it could not, because the collections for non-filing fees establish that the Florida class is composed of at least 25,000 to 40,000 members. Instead, Badcock asserts that the other prerequisites for class certification were not properly established in this case.
The threshold of the "commonality" criterion is not high. Broin v. Philip Morris Companies, Inc., 641 So.2d 888, 890 (Fla. 3d DCA 1994), review denied, 654 So.2d 919 (Fla.1995). "[T]he rule requires only that resolution of the common issues affect all or a substantial number of the class members." Broin, 641 So.2d at 890, quoting Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 473 (5th Cir.1986).
Here, plaintiffs' second amended complaint satisfies the commonality requirement. The subject of the action is the non-filing fee Badcock charged purchasers of consumer goods financed by Badcock. The members of the class have a similar interest in curtailing the activity alleged to be a deceptive and unfair trade practice, and in obtaining injunctive relief and a return of allegedly unlawful charges. Further, all members of the class have a common right of recovery based on the same financing terms.
The "typicality" criterion considers the relationship of the class representatives' claims to the claims of the other members of the class. Broin, 641 So.2d at 892. Here, the plaintiffs' claims are identical to the claims of the other members of the class. Commencing in July 1990, all Badcock purchasers of consumer goods financed by Badcock were required to pay the non-filing fee based on a form captioned "Badcock Easy Purchase Plan Credit Agreement." All claims are based on the same legal theory that the non-filing fee was a finance charge which Badcock failed to disclose, thereby committing a deceptive and unfair trade practice and violating the TILA; and all class members seek the same remedy.
The "adequate representation" requirement "is met if the named representatives have interests in common with the proposed class members and the representatives and their qualified attorneys will properly prosecute the class action." Broin, 641 So.2d at 892; Pottinger, 720 F.Supp. at 959. Entitlement to different amounts of damages, or the possibility of different defenses as to individual members of a class, is not fatal to a class action. Broin, 641 So.2d at 891; Cohen v. Camino Sheridan, 466 So.2d 1212, 1214 (Fla. 4th DCA 1985). By the same token, the possibility of counterclaims or defenses as to delinquent accounts does not preclude resolution of an issue common to all class members in a single trial. See R.J. Reynolds Tobacco Co. v. Engle, 672 So.2d 39, 41 (Fla. 3d DCA 1996).
We conclude the trial court's determination that the prerequisites for class certification were met was proper in this case, and affirm the order appealed in Case No. 95-2592.

SUMMARY JUDGMENT CASE NO. 95-4648
The allegations of the second amended complaint indicate that plaintiff Sherry A. Myers financed purchases of consumer goods from Badcock on December 5, 1991; December 11, 1991; May 1, 1992; and December 3, 1992. On each occasion, Ms. Myers was charged a nonfiling fee of seven dollars. Plaintiff Betty Jones financed the purchase of consumer goods from Badcock on February 8, 1992, and March 13, 1993; on each occasion she was charged a non-filing fee of seven dollars. The complaint further alleged that Badcock consumers were offered financing under terms which granted Badcock a purchase money security interest in the consumer goods purchased, which purchase money security interest was perfected without filing.
The complaint alleges that Badcock entered into an agreement with American Bankers Insurance Company in 1989. Under the agreement, Badcock would charge its customers a fee for each purchase of consumer *781 goods on credit. Badcock represented the fee as a non-filing fee for the purchase of non-filing insurance allegedly designed to protect Badcock for losses resulting from its failure to file a financing statement. American Bankers issued a "non-filing" insurance policy, which limited the insurer's liability for losses to ninety percent of the premiums. American Bankers retained ten percent of all premiums paid and remitted the remaining ninety percent to Badcock as losses. Paragraph 10 of the complaint states:
10. Commencing in July 1990, the Defendant established a financing procedure which Plaintiffs and other consumers were required to pay a fee with respect to each financed purchase of consumer goods in excess of $200. This fee was in addition to the purchase price of the consumer goods, the stated finance charge and all other lawful charges and was purportedly for the Defendant to purchase non-filing insurance under the policy described above. This procedure was set forth in the Badcock Easy Purchase Plan Credit Agreement and provided as follows:
I understand you are allowed by law to charge a fee for filing a security interest statement with public officials; and, instead of filing, that you are allowed to charge a fee for purchasing non-filing insurance. I further understand you will purchase and charge a fee for non-filing insurance. The amount of the fee for my account is $7.00. The fee will be imposed each time I have an additional charge of $200.00 or more added to my account.
The complaint alleges the effect of the policy of insurance "was simply that American Bankers would retain 10% of all premiums paid and remit the remaining 90% to Defendant as `losses'." Plaintiffs alleged that because a purchase money security interest in consumer goods is automatically perfected without filing, the insurance could not be "in lieu of perfecting" that security interest. Thus, Badcock should not be permitted to charge a fee for insurance instead of filing, as it represented to its customers it was authorized to do.
Between August and December 1994, American Bankers made various adjustments to the non-filing policy issued to Badcock.[3] Among other things, American Bankers removed the stop-loss provision from the policy, and designated the payments to Badcock under the policy "as part of the Experience Refund addendum" in the agreement. On March 30, 1995, Badcock ceased its collection of the non-filing fees in this state.
On November 22, 1995, the trial court issued an order granting plaintiffs' motion for partial summary judgment on liability. In the order, the trial court found Badcock had been guilty of deceptive and unfair trade practices in violation of section 501.204, Florida Statutes, because (1) Badcock represented the non-filing fee was for purchase of insurance, when the relationship between Badcock and American Bankers was not one of insurance; (2) if the relationship were deemed insurance, it was at best bankruptcy insurance or credit insurance, not non-filing insurance as represented by Badcock; (3) the additional charge was not a filing fee or a fee for purchase of non-filing insurance, thus was in direct violation of the TILA; and (4) because Badcock was an automatically perfected purchase money creditor, the additional charge for insurance, which was included in the amount to be financed rather than in the total finance charge, was a violation of the TILA.
The legislature expressly directed that the Florida Deceptive and Unfair Trade Practices Act shall be accorded a liberal construction to promote the following policies:
(1) To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices.
(2) To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

*782 (3) To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.
§ 501.202, Fla.Stat.
The parties or activities excluded from operation of the act are set forth in section 501.212, Florida Statutes, which states in part:
This part does not apply to:
....
(4) Any person or activity regulated under laws administered by the Department of Insurance or the Florida Public Service Commission or banks and savings and loan associations regulated by the Department of Banking and Finance or banks or savings and loan associations regulated by federal agencies. (Emphasis supplied.)
This provision forms the basis of Badcock's argument that plaintiffs have failed to state a valid claim under the Florida DUPTA.
To resolve the question, we must determine whether the service provided to Badcock by American Bankers Insurance Company constituted insurance, subject to the regulatory authority of the Department of Insurance. Risk transference and risk distribution are basic characteristics of most insurance transactions. Since these characteristics are present in many other arrangements that are not viewed or treated as insurance, the determination of what constitutes insurance usually is predicated on additional factors or considerations.[4] Robert E. Keeton and Alan I Widiss, Insurance Law § 1.1(b) (1988). See also Helvering v. Le Gierse et al., 312 U.S. 531, 539, 61 S.Ct. 646, 649, 85 L.Ed. 996 (1941)("Historically and commonly insurance involves risk-shifting and risk-distributing.").
In Professional Lens Plan, Inc. v. Department of Insurance, 387 So.2d 548, 550 (Fla. 1st DCA 1980), this court was called upon to determine whether a plan offered to Florida optometrists was subject to regulation as "insurance" under the Florida Insurance Code. In its analysis of the subject plan, the court considered the following five elements enumerated in Guaranteed Warranty Corp., Inc. v. State ex rel. Humphrey, 23 Ariz.App. 327, 533 P.2d 87, 90 (1975), as normally present in an insurance contract:
1. An insurable interest.
2. A risk of loss.
3. An assumption of the risk by the insuror.
4. A general scheme to distribute the loss among the larger group of persons bearing similar risks.
5. The payment of a premium for the assumption of risk.
See also State Farm Fire & Casualty Co. v. Hicks, 184 So.2d 685, 686 (Fla. 2d DCA), cert. denied, 189 So.2d 634 (Fla.1966)(the essentials of a contract of insurance are the subject matter, the risk insured against, the amount of insurance, the duration of the risk, and the identity of the parties).
Application of these elements to the transaction here at issue indicates that, with few exceptions, Badcock did not have an insurable interest which was covered by the nonfiling policy issued to Badcock by American Bankers. The exceptions were the few instances when the collateral was sold to a third party for value without knowledge of the security interest. Badcock's security interest in its credit sale of consumer goods is automatically perfected at the time of its creation, without any additional act. § 679.302(1)(d), Fla.Stat.; James J. White and Robert S. Summers, Uniform Commercial Code § 23-6, at 919 (2d Ed.1980). A perfected secured creditor has priority over an unsecured creditor and over a subsequent lien creditor, even the trustee in bankruptcy. White & Summers, Uniform Commercial Code § 23-5, at 918.
Further, it appears American Bankers assumed no risk of loss, because its liability under the agreement was limited to ninety percent of the amount collected as premiums. Although the record indicates that Farmers Furniture and Heilig-Meyers have enrolled in similar programs with American Bankers *783 or its affiliate, Voyager, no evidence was presented of a general scheme to distribute the loss among a larger group of retailers with similar risks. In addition, no evidence was presented that the fee or premium charged was based on an analysis of Badcock's potential losses based on past experience. Badcock determined the amount of fee to be charged, i.e., seven dollars, and collected that amount in connection with each financed purchase of consumer goods in the amount of two hundred dollars or more. The fees were then transmitted to American Bankers, which returned ninety percent of the amount collected to Badcock on a monthly basis.
A review of the provisions of the Insurance Code cited by Badcock demonstrates that nonfiling insurance is a valid product, which, in appropriate circumstances, is subject to regulation by the Department of Insurance. However, the conduct here at issue does not qualify as insurance under the criteria set forth in Professional Lens. Instead, it appears Badcock imposed an additional charge on its credit customers under the guise of collecting an insurance premium. Designation of the charge as a premium for credit insurance would have required Badcock to include it in the finance charge. See 15 U.S.C. § 1605(a)(5). In actual practice, Badcock included the charge in the amount financed.
The Georgia and Louisiana cases cited by Badcock in support of its contention that section 501.212 exempts plaintiffs' claims from operation of the deceptive and unfair trade practices act involve actions by an insured against an insurer. In the cited cases, the question was whether or not insurance coverage existed. In contrast, the non-filing insurance question in this case is not the existence of insurance coverage, but whether Badcock misrepresented the non-filing insurance as a necessary alternative to filing, and then improperly included the charge in the amount to be financed rather than disclosing it as a finance charge. Merely terming the charge a "nonfiling fee" does not transform the transaction into conduct proper for regulation by the Department of Insurance.
The determination of a finance charge under the federal TILA is governed by 15 U.S.C. § 1605(a), which states:
(a) Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction. Examples of charges which are included in the finance charge include any of the following types of charges which are applicable:
(1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.
(2) Service or carrying charge.
(3) Loan fee, finder's fee, or similar charge.
(4) Fee for an investigation or credit report.
(5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss. (Emphasis supplied.)
Section 1605(d)(2) of the TILA permits creditors to exclude "[t]he premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction."
The TILA is remedial legislation. As such, its language must be liberally construed in favor of the consumer. Rodash v. AIB Mortgage Co., 16 F.3d at 1144; Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1380 (11th Cir.1984); Dixon v. S & S Loan Service of Waycross, Inc., 754 F.Supp. 1567, 1570 (S.D.Ga.1990); In Re Pinkston, 183 B.R. 986, 987 (Bkrtcy.S.D.Ga.1995). Liberal construction of the provisions of the TILA here at issue demonstrates that Badcock misrepresented the nature of the nonfiling fee which it charged on each two hundred dollar credit sale of goods for personal use.
In short, the record reflects the arrangement between Badcock and American Bankers *784 constituted a form of default protection rather than non-filing insurance. As such, the charge should have been included in the finance charge rather than in the amount to be financed. By including the charges in the amount to be financed, Badcock acquired a fund from which it could offset bad debt losses at the expense of its credit customers. This tactic also increased the base upon which interest would be computed for those credit customers.
Our review of the record has been performed with a careful examination of the materials relied upon by Badcock for the proposition that material issues of fact exist which bar summary judgment on liability. As Badcock asserts, the record contains testimony that Badcock's proof of loss information was available to American Bankers and American Bankers periodically audited the Badcock accounts. Nevertheless, this testimony does not establish the existence of a fact issue with regard to the absence of risk shifting to American Bankers and the ninety percent cap on liability. The evidence is clear that Badcock's primary business is the sale of consumer goods; the corporation has very few commercial sales. The corporation files UCC-1 financing statements with respect to some of its commercial transactions. Curiously, the non-filing fee is not charged in connection with those commercial sales in which a UCC-1 financing statement is not filed, and Badcock has not claimed reimbursement from American Bankers for losses in connection with commercial sales. The conflicts in the evidence are minimal, and do not undermine the trial court's conclusion that Badcock misrepresented the nature of the non-filing fee, and in so doing, committed an unfair and deceptive trade practice as a matter of law.
Accordingly, we affirm the order certifying a class in Case No. 95-2592, and we affirm the order granting plaintiffs' motion for summary judgment on liability in Case No. 95-4648.
BOOTH and VAN NORTWICK, JJ., concur.
NOTES
[1] § 501.201 et seq., Fla.Stat. (1995).
[2] 15 U.S.C. § 1601 et seq.
[3] The record suggests that the policy adjustments were made in response to Badcock concerns about the validity of the policy furnished by American Bankers.
[4] "Insurance" is defined in section 624.02, Florida Statutes, as "a contract whereby one undertakes to indemnify another or pay or allow a specified amount or a determinable benefit upon determinable contingencies."